[No. S017399. July 2, 1992.]

BONNIE MOORE et al., Plaintiffs, Cross-defendants and Appellants, v. CALIFORNIA STATE BOARD OF ACCOUNTANCY, Defendant, Cross-complainant and Respondent.

1000

## COUNSEL

Kronick, Moskovitz, Tiedemann & Girard, Leonard M. Friedman and Ralph C. Alldredge for Plaintiffs, Cross-defendants and Appellants.

Robert C. Fellmuth, Julianne B. D'Angelo, Gerald J. Thain, William H. Sager and James G. Seely as Amici Curiae on behalf of Plaintiffs, Cross-defendants and Appellants.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, and Wilbert E. Bennett, Deputy Attorney General, for Defendant, Cross-complainant and Respondent.

## OPINION

**BAXTER, J.**—We granted review in this case to determine whether persons *unlicensed* by the State Board of Accountancy (Board), the public agency charged with administering the regulatory scheme governing the profession of public accountancy in California (Bus. & Prof. Code, § 5000[1] et seq., commonly known as the Accountancy Act), may hold themselves out to the public as "accountants," or as persons qualified and lawfully able to offer "accounting" services for compensation.

---

[1]All further statutory references are to the Business and Professions Code unless otherwise indicated.

As will be shown, under California's regulatory scheme, accounting activities falling within the statutory definition of the "practice of public accountancy" are reserved to the Board's licensees. "Public accountancy" is broadly defined; a person is deemed to be practicing public accountancy, and is thus subject to the jurisdiction and licensing requirements of the Board, if the person does any of the following: "[h]olds himself or herself out to the public *in any manner* as one skilled in the knowledge, science and practice of accounting, and as qualified and ready to render professional service therein as a public accountant for compensation" (§ 5051, subd. (a), italics added); "[o]ffers to prospective clients to perform for compensation . . . professional services that involve or require an audit, examination, verification, investigation, certification, presentation, or review, of financial transactions and accounting records" (*id.*, subd. (c)); or "[i]n general or as an incident to that work, renders professional services to clients for compensation *in any or all matters relating to accounting procedure* and to the recording, presenta-. tion, or certification of financial information or data" (*id.*, subd. (e), italics added).

In contrast, unlicensed persons may offer to the public only a limited category of basic accounting services when performed "as a part of bookkeeping operations." (§§ 5051, subd. (f), 5052.) Furthermore, they may not assume or use any title or designation "likely to be confused" with the two official titles reserved for licensed accountants: "certified public accountant" and "public accountant." (§ 5058.) Exercising the rulemaking authority granted to it in the Accountancy Act, the Board has adopted a regulation which prohibits the use of either the title "accountant" or the description of services offered as "accounting" by an unlicensed person. (Cal. Code Regs., tit. 16, § 2 [hereafter Regulation 2].) Appellants contend that in so doing the Board exceeded its authority, that the regulation is therefore invalid, and that even if the regulation is permissible under section 5058, the restriction denies them rights under the First Amendment to the United States Constitution.

California's statutory scheme reserves the practice of public accountancy to the Board's licensees—persons who have been certified as qualified to offer and perform the full gamut of accounting services, and whose educational, experience, and ethical qualifications have been established as a prerequisite to licensing. To protect members of the public from the unlicensed practice of public accountancy, section 5058 prohibits the use by an unlicensed person of *any* designation or term describing the person's profession, or services he or she offers, that is likely to cause a layperson to believe that the provider is licensed. Thus, the section expressly prohibits the use by an unlicensed person of any designation that is "likely to be confused with 'certified public accountant' or 'public accountant.' "

The Board has determined that the terms "accountant" and "accounting" are misleading to members of the public, many of whom believe that a person who uses these terms must be licensed. For the reasons explained below, we conclude that the adoption and enforcement of Regulation 2 is a proper exercise of the Board's authority to administer the Accountancy Act, and, in particular, section 5058. We further conclude, however, that the regulatory scheme may constitutionally ban only those uses of the terms "accountant" and "accounting" that may potentially mislead the public regarding the user's licensee or nonlicensee status. Where the terms are used in conjunction with a modifier or modifiers that serve to dispel any possibility of confusion—for example, an express disclaimer stating that the "accounting" services being offered do not require a state license—their use in such a context may not be constitutionally enjoined.

I

FACTS AND PROCEDURAL BACKGROUND

In 1986, appellants Bonnie Moore, an unlicensed individual, Accounting Center, a California corporation of which Moore is president, and the California Association of Independent Accountants (CAIA), a nonprofit membership organization affiliated with the National Society of Public Accountants (NSPA), collectively filed suit against respondent Board for declaratory relief and a permanent injunction. (Code Civ. Proc., § 1060.) The complaint alleged that Moore had received a letter from the Board ordering her and Accounting Center to cease and desist from using the terms "accountant" and "accounting" in referring to herself, the business of Accounting Center, or the services she offered to the public. The complaint further alleged that resolution of the question of whether the Board may constitutionally prohibit use of generic terms such as "accountant" and "accounting" by unlicensed individuals will affect thousands of other unlicensed persons practicing throughout the state of California. At that time approximately 700 such individuals were members of CAIA, and the officers and directors of CAIA joined the lawsuit to challenge the Board's actions on behalf of CAIA's membership. The complaint sought a declaratory judgment that the Board may not constitutionally enjoin or prohibit appellants or members of CAIA from using the terms "accountant" and "accounting" in referring to unlicensed persons or the services rendered by them, and a permanent injunction ordering the Board to cease all enforcement actions against the use of those terms.

After its demurrer to the complaint was overruled, respondent Board filed an answer and a cross-complaint for injunctive relief against the named

plaintiffs plus 2,000 Doe defendants. Does 1 through 1,000 were designated California members of CAIA, and Does 1,001 through 2,000 were designated as individuals who "have transacted and continue to transact business in the County of San Francisco and elsewhere in the State of California." The cross-complaint alleged that the cross-defendants were engaged in the practice of public accountancy and of tax preparation within California, yet were not licensed as public accountants or certified public accountants. The first amended cross-complaint prayed in part that cross-defendants be enjoined from using the words "accountant," "accounting," or "accounting services" in referring to themselves or their businesses, or representing themselves as "accountants" in any other manner which would tend to mislead or confuse the public.

During the ensuing court trial, evidence was introduced establishing that Moore possesses a college degree with a major in accounting. She has never taken the examination to become a certified public accountant (CPA), nor is she interested in doing so. Respondent Board concedes she meets the educational eligibility requirements for the CPA examination, but not the experience requirement for licensure. As a practical matter, in order to satisfy the latter requirement—two years of public accounting experience under the supervision of a licensed accountant (§§ 5081.1, 5083)—she would have to secure employment with a CPA for at least two years.

Accounting Center primarily designs and installs basic accounting systems for small business clients. Once the system is set up, bookkeepers service the accounts, supervised by degreed accountants. The firm prepares monthly financial statements and long-range financial projections for its clients in furtherance of budgetary control and sound financial management practices. In a generic sense, the firm "audits" its client's books for internal purposes, although it does not produce formal signed audits. Moore conceded she is not qualified to perform the type of formal audits that a CPA does, nor is she qualified to perform services that require a certification of financial statements.

Moore uses the terms "accountant" and "accounting" to describe herself and her services in 90 percent of her advertising. She refers to her business on building directories, in the telephone directory, and in radio and television advertising as "Accounting Center."

Like Moore, none of the various officers or members of CAIA who testified at trial have ever passed the CPA examination. Ronald Duffin, a former president of CAIA, operates an accounting and tax service. Edwin Greenstreet, another former president of CAIA, operates a tax, accounting

and bookkeeping business. John Jenkins, president-elect of CAIA at the time of trial, owns a bookkeeping and income tax business. Among other services, he prepares reports that are filed with various governmental agencies, and signs the reports as "John Jenkins, Accountant."

In January 1987, after respondent Board had unsuccessfully demurrered to appellants' complaint and filed its answer, the Board, through its counsel, the Office of the California Attorney General, contacted the Field Research Corporation, an independent opinion research firm that conducts the California Poll, an ongoing survey of Californians that attempts to measure public attitudes on various unrelated topics. All results from the polls are made public. The Attorney General sought to determine the public's perception of whether a person is licensed by the State of California when that person holds himself or herself out as an "accountant" ready and able to offer "accounting services." To this end, the following two questions were included in the April 1987 California Poll: (1) "Do you think that persons who refer to themselves as accountants in advertising to the public are required to be licensed by the State of California?," and (2) "Do you think persons who advertise accounting services to the public are required to be licensed by the State of California to offer such services?"

The results of the poll with respect to the first question indicated that 55 percent of those surveyed believed that a person who advertised as an "accountant" had to be licensed, 26 percent did not believe a license was required, and 19 percent did not know. The results of the second question indicated that 53 percent believed that a person who advertised "accounting services" to the public was required to be licensed by the state, 29 percent did not believe a license was required, and 18 percent did not know.

Appellants introduced expert testimony in an effort to establish the ordinary meaning and usage of the terms "accountant," "accounting," and "bookkeeping." Dr. Maurice Moonitz, Accounting Professor Emeritus at the University of California, testified that over the years "double entry bookkeeping," a "fairly simple recording technology" by which business transactions are recorded, evolved into the field now commonly known as accounting. Today, according to Moonitz, the accounting profession, which he characterizes as the "umbrella term," has absorbed the basic recording or bookkeeping functions which, in years past, were performed by "bookkeepers." Traditionally, the bookkeeper would identify the transactions that are taking place, and then record the transactions according to a "predesigned pattern" or system of recordation. Today, the accountant "would probably be the one who designed the system in the first place," and "would take over the financial statements, preparation of those, because then those would need

analysis so that the accountant could inform management of the meaning of what took place during the year."

At the completion of trial, the court entered judgment denying relief to appellants, and granting respondent Board's request for a permanent injunction enjoining appellants from "[u]sing the words 'accountant,' 'accounting,' or 'accounting services' in referring to themselves, their businesses or their services in the context of holding themselves out to the public in the offering or rendering of professional services, or representing themselves as 'accountants' in any other manner which would tend to mislead or confuse the public."

This appeal followed. The Court of Appeal, relying in part on the only California case to have considered whether use of the terms at issue here may be banned—*People* v. *Hill* (1977) 66 Cal.App.3d 320 [136 Cal.Rptr. 30] (*Hill*)—concluded the statutory scheme prohibited an unlicensed person from holding himself or herself out to the public as an "accountant," or as a person otherwise qualified to provide "accounting services" for compensation. Crediting the California Poll survey evidence introduced by respondent Board, the Court of Appeal found that "the terms 'accountant' and 'accounting,' standing alone, are misleading to the public and may not be utilized by unlicensed persons."

The Court of Appeal went on to observe that the *Hill* court (*supra*, 66 Cal.App.3d 320), in upholding the preliminary injunction before it in that case, did not reach or consider the constitutional limitations called into play by the United States Supreme Court's commercial speech decisions of the past decade. The Court of Appeal therefore proceeded to reach the constitutional issue, concluding that the high court's commercial speech cases "make it clear that to satisfy the First Amendment, we must permit the use of [the generic terms] if they are qualified by a warning or disclaimer that avoids their misleading impact." The Court of Appeal concluded, "While we do not intend to dictate the language which would be acceptable, it is obvious that the term 'unlicensed accountant,' for instance, is not misleading. Thus, the judgment and injunction in this case must be modified to prohibit only the use of the terms 'accountant' or 'accounting' without a modifier, qualifier, disclaimer, or warning stating either that the advertiser is not licensed by the state or that the services provided do not require a state license."

Appellants urge this court to reverse the Court of Appeal decision. They contend that the key statute, section 5058, neither expressly nor implicitly prohibits an unlicensed person from using the unqualified generic terms. To the extent *Hill, supra,* 66 Cal.App.3d 320, held that the Accountancy Act

permits such a prohibition, appellants urge that it was wrongly decided and should be disapproved. Appellants further contend that Regulation 2, the Board's administrative regulation implementing section 5058 by prohibiting *any* use of the terms "accountant" or "accounting" by unlicensed persons, improperly expands the scope of that statute and should therefore be declared invalid. It is asserted that if unlicensed persons can lawfully offer basic "accounting" services to the public under the state's regulatory scheme, then such persons' use of the generic terms "accountant" or "accounting" in holding themselves out to the public is constitutionally protected commercial speech, and consequently, the Board's blanket prohibition upon their use of the generic terms imposes an unconstitutional restraint on their First Amendment rights.

Appellants further contend that the California Poll survey evidence introduced by respondent below established, at best, only that use of the generic terms "accountant" or "accounting" by unlicensed individuals is *potentially* misleading to the public. Although appellants *concede* that a state may implement a less restrictive alternative than an outright ban in order to remedy the harmful effects on the public of potentially misleading professional advertising, they urge that such is a legislative prerogative, that California's Legislature has never implemented any such regulation, and that a court may not "rewrite" a statute absent clear legislative intent.[2]

Respondent in turn argues *Hill* was correctly decided and should be deemed controlling here, i.e., that the use of the terms "accountant" or "accounting," whether qualified or standing alone, by unlicensed persons offering their services to the public for compensation, is statutorily prohibited. In particular, respondent points to the language of section 5058 that prohibits unlicensed persons from using *any* title or designation "likely to be confused" with the two official terms denoting licensure ("certified public accountant" and "public accountant"). The generic terms "accountant" and "accounting," respondent asserts, are titles "likely to be confused" with those official terms, and are thus subject to section 5058's prohibition.

Respondent contends the Accountancy Act, thusly construed, passes constitutional muster. Relying on the California Poll survey evidence which, respondent claims, established that an unlicensed person's use of the generic terms in fact misleads the public, respondent concludes the use of such titles

---

[2]The Center for Public Interest Law, the NSPA, and the California Society of Enrolled Agents have each filed amicus curiae briefs in support of the position taken by appellants. In addition, this court is in receipt of numerous letters in support of appellants from unlicensed individuals and businesses that practice bookkeeping and offer basic accounting and tax preparation services to the public.

constitutes misleading advertising that is not subject to First Amendment protection, and may be banned entirely by the state. (See *In re R. M. J.* (1982) 455 U.S. 191, 203 [71 L.Ed.2d 64, 74, 102 S.Ct. 929].)

## II

At the threshold, it is undisputed that the Legislature, in the public interest and in furtherance of the general welfare, is empowered to regulate the profession of public accountancy. (See, e.g., 1 Am.Jur.2d, Accountants (1962) § 2.) California's first entry into the regulation of the profession came in 1901, when the Legislature established a five-member State Board of Accountancy, and vested in it the power to examine applicants, and grant certificates of qualification to practice public accountancy. (Stats. 1901, ch. 213, p. 645.) The regulatory scheme underwent a major revision in 1945, and the Board was expanded to seven members. (Stats. 1945, ch. 1353, § 2, pp. 2529-2545.) Presently, the Board consists of 12 members, 8 of them state-licensed accountants, and 4 public members. (§ 5000.) It is empowered, among other things, to adopt regulations as may be reasonably necessary to administer the Accountancy Act (§ 5010), and to adopt rules of professional conduct governing its licensees. (§ 5018.) The Board is also authorized to seek injunctions against persons who have engaged or are about to engage in conduct or practices which violate the Accountancy Act. (§ 5122.)

Under the present California licensing scheme, certified public accountants must satisfy rigorous educational, experience, and examination requirements prior to obtaining licensure. Applicants must take and pass a written examination in accounting theory and practice, auditing, commercial law as affecting accountancy, and other related subjects. (§ 5082.) They may be denied a license (or a licensee's license may be suspended or revoked, or renewal of a license refused) if they have committed certain crimes, committed an act of fraud or dishonesty, or done other specified acts which would be cause for discipline by the Board. (§§ 480, 5081, 5100.) The Board's licensees must adhere to professional standards and continuing education requirements in order to maintain licensure; noncompliance with such professional standards or other licensure requirements can lead to suspension or revocation of, or refusal to renew, a license. (§ 5100.)

In contrast, the Board's enforcement activities against *unlicensed persons* engaged in the practice of public accountancy are limited to responding to those consumer complaints over which it has jurisdiction. It has jurisdiction over complaints involving unlicensed persons holding themselves out to the public as licensed accountants. It has no jurisdiction over complaints involving the quality of "accounting" work or services performed by nonlicensees.

Section 5050 provides that "No person shall engage in the practice of public accountancy in this State unless such person is the holder of a valid permit to practice public accountancy issued by the board[.]" According to the testimony of the executive officer of the Board, violators of section 5050 may be referred to the Division of Investigation, a state agency, for investigation and possible referral to the local district attorney's office for civil or criminal prosecution, but the Board itself is not empowered to "prosecute" unlicensed persons for the unlawful practice of public accountancy.

Accordingly, for purposes of our analysis herein, the term "unlicensed person" includes *any* person who does not hold a valid permit issued by the Board to practice public accountancy. It includes persons, like appellant Bonnie Moore, who, the Board concedes, can meet the educational eligibility requirements for the CPA examination but not the experience requirement for licensure. It would also include persons without any formal educational background or experience in the accounting profession whatsoever, who nonetheless attempt to seek compensation from members of the public for the rendering of "accounting" services. And it would include a former Board licensee who, due to a breach of professional ethics or the commission of a crime or act of fraud or dishonesty, has had his or her license revoked by the Board. All such persons, although unlicensed, may nonetheless seek to offer to the public for compensation a limited category of basic accounting services *"as a part of bookkeeping operations."* (§ 5051, subd. (f), italics added; § 5052.)[3]

With this background in mind, we turn to the principal statute at issue in this case, section 5058. Section 5058 provides, in pertinent part: "No person or partnership shall assume or use the title or designation 'chartered accountant,' 'certified accountant,' 'enrolled accountant, 'registered accountant' or 'licensed accountant,' or any other title or designation likely to be confused with 'certified public accountant' or 'public accountant,' or any of the abbreviations 'C.A.,' 'E.A.,' 'R.A.,' or 'L.A.,' or similar abbreviations likely to be confused with 'C.P.A.' or 'P.A.' . . ."[4]

■ Appellants urge us to invoke the principle of statutory construction known by the Latin names *ejusdem generis* and *noscitur a sociis*, that when

---

[3]Section 5052, commonly referred to as the "bookkeeping exception," provides: "Nothing in this chapter shall apply to any person who as an employee, independent contractor, or otherwise, contracts with one or more persons, organizations, or entities, for the purpose of keeping books, making trial balances, statements, making audits or preparing reports, *all as a part of bookkeeping operations*, provided that such trial balances, statements, or reports are not issued over the name of such person as having been prepared or examined by a certified public accountant or public accountant." (Italics added.)

[4]The above quoted portion of section 5058 is identical to the text of its 1945 predecessor statute (former § 5065).

a statute contains a list or catalogue of items, a court should determine the meaning of each by reference to the others, giving preference to an interpretation that uniformly treats items similar in nature and scope. (See *People v. Rogers* (1971) 5 Cal.3d 129, 142 [95 Cal.Rptr. 601, 486 P.2d 129] [conc. & dis. opn. of Mosk, J.]; *Armenta v. Churchill* (1954) 42 Cal.2d 448, 454 [267 P.2d 303]; *People v. Thomas* (1945) 25 Cal.2d 880, 899-900 [156 P.2d 7]; *Treasure I.C. Co. v. St. Bd. of Equal.* (1941) 19 Cal.2d 181, 188 [120 P.2d 1]; see generally, 2A Sutherland, Statutory Construction (4th ed. 1984) §§ 47.16-47.22, pp. 161-193.) In accordance with this principle of construction, a court will adopt a restrictive meaning of a listed item if acceptance of a more expansive meaning would make other items in the list unnecessary or redundant, or would otherwise make the item markedly dissimilar to the other items in the list. (See *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1159-1160 [278 Cal.Rptr. 614, 805 P.2d 873]; *Peralta Community College Dist. v. Fair Employment & Housing Com.* (1990) 52 Cal.3d 40, 50 [276 Cal.Rptr. 114, 801 P.2d 357]; *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1390-1391 [241 Cal.Rptr. 67, 743 P.2d 1323].)

█ Appellants point to the fact that section 5058 contains a list of titles that, the Legislature has determined, are designations "likely to be confused" with the two titles reserved to Board-licensed accountants: "certified public accountant" and "public accountant." Each of the five expressly prohibited titles is comprised of the generic term "accountant" coupled with a modifier. Appellants urge that if the Legislature deemed the unadorned generic term "accountant" a title "likely to be confused" by the public with the two official designations denoting licensure, its unmodified use would have been expressly prohibited in section 5058.

Respondent urges us to instead focus on section 5058's catchall language prohibiting an unlicensed person's use of "any other title or designation likely to be confused with [the two official terms denoting licensure] . . . ." The generic terms "accountant" and "accounting" services are two such confusing designations, argues respondent, and thus the statute should be construed to include the use of the unadorned generic terms within the statutory ban.

█ In construing a statute a court's objective is to ascertain and effectuate the underlying legislative intent. (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1007 [239 Cal.Rptr. 656, 741 P.2d 154].) This fundamental rule overrides the *ejusdem generis* doctrine, just as it would any maxim of jurisprudence, if application of the doctrine or maxim would frustrate the intent underlying the statute. (Civ. Code, § 3509; *Larcher v. Wanless* (1976)

18 Cal.3d 646, 658 [135 Cal.Rptr. 75, 557 P.2d 507]; *Irwin* v. *City of Manhattan Beach* (1966) 65 Cal.2d 13, 21 [51 Cal.Rptr. 881, 415 P.2d 769]; *Matter of Societe Francaise etc.* (1899) 123 Cal. 525, 530-531 [56 P. 458, 56 P. 787]; *Worthington* v. *Unemployment Ins. Appeals Bd.* (1976) 64 Cal.App.3d 384, 388 [134 Cal.Rptr. 507]; *Coleman* v. *City of Oakland* (1930) 110 Cal.App. 715 [295 P. 59].)

■ We are not persuaded that the approach of either party is consistent with the legislative intent reflected in section 5058. Application of the doctrine of *ejusdem generis* would be inappropriate in this context. The Legislature used all-encompassing language in banning not only the expressly identified designations but also *"any other* title or designation that is likely to be confused with 'certified public accountant or 'public accountant.' " (§ 5058, italics added.) Appellants' construction of section 5058 would require us to assume that notwithstanding that broad prohibition of potentially confusing titles, use of the unmodified terms "accountant" and "accounting" was permissible regardless of whether that use was then or proved at some later date to be "likely confused with" licensed status, i.e., that use of those terms was to be permitted no matter how misleading they were. That construction cannot be reconciled with the clear purpose of the statute—ensuring that members of the public who seek the services of a licensed accountant are not misled regarding the status of the person who provides accounting services.

■ We agree with appellants, however, that section 5058 does not itself expressly prohibit the use of the unmodified terms "accountant" and "accounting." To read the section in that manner would render the identification of the specific terms which were banned surplusage, since the ban on "any . . . title or designation likely to be confused with 'certified public accountant' or 'public accountant' " encompasses those terms. The Legislature therefore had some other purpose for both identifying specific terms that are not to be used and banning other potentially misleading designations that it did not identify. Since that purpose could not have been to permit the use of misleading terms, it is reasonable to conclude that when the statute was amended in 1945 the Legislature was aware that the titles or designations it specifically identified were or had been in use and were misleading. Recognizing that other terms it had not then identified as misleading could be so, or might become misleading in the future, however, the Legislature made provision for that possibility by prohibiting the use of "any" misleading term.

Inasmuch as enforcement of the provisions of the Accountancy Act, including section 5058, is entrusted to the Board, it seems apparent that the

Legislature delegated to the Board the authority to determine whether a title or designation not identified in the statute is likely to confuse or mislead the public. Since the Board was also authorized to seek an injunction against the use of such terms, its authority to "adopt, repeal, or amend such regulations as may be reasonably necessary and expedient for the . . . administration of [the Accountancy Act]" (§ 5010) includes the power to identify by regulation those terms which it finds are "likely to be confused with 'certified public accountant' or 'public accountant,' " the use of which may be enjoined under the broad prohibition of section 5058. To conclude otherwise would contravene the intent and purpose behind the statute.

In 1948, the Board exercised its authority to identify other potentially misleading designations that were subject to the catchall prohibition of what was then section 5065 (the predecessor statute to § 5058, identical in all respects relevant here) by the adoption of Regulation 2, which provides:

"§ 2 *Confusing Titles*

"The following are titles or designations likely to be confused with the titles Certified Public Accountant and Public Accountant within the meaning of Section 5058 of the Business and Professions Code:

"(a) 'Accountant,' 'auditor,' 'accounting,' or 'auditing,' when used either singly or collectively or in conjunction with other titles.

"(b) Any other titles or designations which imply that the individual is engaged in the practice of public accountancy."

■■ In considering whether Regulation 2 is a valid exercise of the Board's power to adopt regulations necessary for the administration of the Accountancy Act, and in particular section 5058,[5] "our task is to inquire into the legality of the . . . regulation, not its wisdom. (*Morris* v. *Williams* (1967) 67 Cal.2d 733, 737 [63 Cal.Rptr. 689, 433 P.2d 697].) . . . [I]n reviewing

[5]The Board's Regulation 2 was placed in issue in this case through the parties' pleadings in the trial court. Appellants alleged in their complaint for declaratory relief that, "The Board has taken the position that any use of the terms 'accountant' or 'accounting' by a non-licensed accountant is a violation of Business and Professions Code Section 5058. . . ." Respondent Board countered the allegation in its answer as follows: "[D]efendant admits that the Board has taken the position, based on statutory and case law, that unlicensed persons may not legally use the terms 'accounting' or 'accountant' in describing themselves or their services . . . . Further answering [the allegation,] defendant affirmatively alleges that the Board has duly adopted and filed a regulation (Title 16, California [Code of Regulations,] section 2(a)) stating that the terms 'accountant,' 'auditor,' 'accounting,' or 'auditing' are titles or designations likely to be confused with the titles Certified Public Accountant and Public Accountant within the meaning of Business and Professions Code section 5058."

the legality of a regulation adopted pursuant to a delegation of legislative power, the judicial function is limited to determining whether the regulation (1) is 'within the scope of the authority conferred' (Gov. Code, [former] § 11373 [see current Gov. Code § 11342.1]) and (2) is 'reasonably necessary to effectuate the purpose of the statute' (Gov. Code, [former] § 11374 [see current Gov. Code § 11342.2]). [Fn. omitted.] Moreover, 'these issues do not present a matter for the independent judgment of an appellate tribunal; rather, both come to this court freighted with the strong presumption of regularity accorded administrative rules and regulations.' (*Ralphs Grocery Co.* v. *Reimel* (1968) 69 Cal.2d 172, 175 [70 Cal.Rptr. 407, 444 P.2d 79].) And in considering whether the regulation is 'reasonably necessary' under the foregoing standards, the court will defer to the agency's expertise and will not 'superimpose its own policy judgment upon the agency in the absence of an arbitrary and capricious decision.' (*Pitts* v. *Perluss* (1962) 58 Cal.2d 824, 832 [27 Cal.Rptr. 19, 377 P.2d 83].)" (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 411 [128 Cal.Rptr. 183, 546 P.2d 687].)

 The promulgation of Regulation 2, which implements the catchall language of section 5058, appears well within the authority conferred on the Board by the Legislature to "adopt . . . such regulations as may be reasonably necessary and expedient for the . . . administration of [the Accountancy Act]." (§ 5010.) Furthermore, Regulation 2's declaration—that the generic terms "accountant" and "accounting" are themselves titles or designations likely to be confused with "certified public accountant" and "public accountant"—appears reasonably necessary to effectuate the purpose and intent behind section 5058: the protection of the public from the unlicensed practice of public accountancy through the elimination of any likelihood of confusion from the use of potentially misleading or confusing titles. The results of the California Poll survey evidence introduced in this case tend to bear this out.

The following two questions were asked of those responding to the poll: (1) "Do you think that persons who refer to themselves as accountants in advertising to the public are required to be licensed by the State of California?," and (2) "Do you think persons who advertise accounting services to the public are required to be licensed by the State of California to offer such services?"

The results of the poll with respect to the first question indicated that 55 percent of those surveyed believed a person who advertised as an "accountant" had to be licensed, 26 percent did not believe a license was required, and 19 percent did not know. The results of the second question indicated

that 53 percent believed that a person who advertised "accounting services" to the public was required to be licensed by the state, 29 percent did not believe a license was required, and 18 percent did not know.

The survey responses, at the very least, support the inference that members of the public who believe that licensing is required would assume that a person who uses the title "accountant" and the designation "accounting" to describe the services offered is licensed by the state.[6]

In a somewhat analogous context—attorney advertising—it has been observed that special considerations apply to advertising by professionals: "[I]t has been noted that special considerations apply to advertising by lawyers because they 'do not dispense standardized products; they render professional services of almost infinite variety and nature, with the consequent enhanced possibility for confusion and deception if they were to undertake certain kinds of advertising.' (*Va. Pharmacy Board.* v. *Va. Consumer Council* (1976) 425 U.S. 748, 773, fn. 25 [48 L.Ed.2d 346, 365, 96 S.Ct. 1817].) This

---

[6]We do not, in this regard, mean to suggest that the response to a public opinion poll is itself an appropriate basis for "deciding an issue of statutory construction." (See dis. opn. of George, J., *post*, at p. 1033, and fn. 7; dis. opn. of Mosk, J., *post*, at p. 1027.) Obviously, the Legislature did not have the results of this opinion poll before it upon enacting section 5058. What must be determined is whether the Board could reasonably conclude that use of the unmodified terms "accountant and accounting services," as a factual matter, is misleading or potentially misleading to the public's detriment, and if so, whether the Legislature nonetheless intended to exclude those terms from the scope of the prohibitory catchall language when it enumerated a list of specifically prohibited titles which utilize the term "accountant" in conjunction with modifiers.

The survey evidence introduced below merely informs us as to the first, factual inquiry. By analogy, in change of venue cases, survey evidence is often admitted as probative of the determination whether prevailing community attitudes warrant a change of venue. (See, e.g., *Frazier* v. *Superior Court* (1971) 5 Cal.3d 287, 293-294, fn. 6 [95 Cal.Rptr. 798, 486 P.2d 694]; see also *James Burrough Ltd.* v. *Sign of Beefeater, Inc.* (7th Cir. 1976) 540 F.2d 266, 277-278 [results of plaintiff-distiller's face-to-face survey of 500 households admissible in trademark infringement action to establish "likelihood of confusion, deception or mistake" among consuming public regarding defendant's use of plaintiff's registered "Beefeater" mark].) Indeed, at trial respondent introduced evidence of a similar poll taken in Texas in 1985. In the Texas poll, 62 percent of those responding to the survey answered "yes" when asked whether people who advertise as "accountants" are required to be licensed by the State of Texas; 19 percent said "no"; and 19 percent did not know. Michael Hagen, a specialist in the analysis of public opinion research data, testified that in his opinion the data from the Texas poll could inform the conclusions to be drawn from the California poll because of the similarity of responses to comparable questions and the similarity of certain demographic factors in each of the surveys. Based on his review and analysis of the data from the California and Texas polls, Hagen concluded that a majority of Californians believe persons who advertise as "accountants" are required to hold at least a college degree, take a qualifying examination, and be licensed by the state.

We also note that, at oral argument, regarding the circumstance of licensed and unlicensed persons alike using the title "accountant," counsel for appellants readily acknowledged, "There is a possibility that the public might be misled."

court analyzed the above quoted language in *Jacoby* v. *State Bar* (1977) 19 Cal.3d 359 [138 Cal.Rptr. 77, 562 P.2d 1326, 4 A.L.R.4th 273]. Writing for the court, Justice Mosk explained that the footnote 'stands for the proposition that while the First Amendment values in commercial advertising remain constant regardless of the profession involved, the governmental regulatory interest may vary from profession to profession.' (*Id.*, at p. 377.)" (*Leoni* v. *State Bar* (1985) 39 Cal.3d 609, 625 [217 Cal.Rptr. 423, 704 P.2d 183].)

As the court in *Texas State Board of Public Accountancy* v. *Fulcher* (Tex.Civ.App. 1974) 515 S.W.2d 950 observed nearly two decades ago: "[T]he need to protect the public against fraud, deception [and] the consequences of ignorance or incompetence in the practice of most professions makes regulation necessary. The state may exact the requisite degree of skill and learning in professions which affect the public, or at least a substantial portion of the public, such as the practice of law, medicine, engineering, dentistry, and many others. The [accountancy] Act before us recognizes public accountancy as one of such professions. Public accountancy now embraces many intricate and technical matters dealing with many kinds of tax laws, unfair trade practices, rate regulations, stock exchange regulations, reports required by many governmental agencies, financial statements and the like." (*Id.*, at pp. 954-955.)

These observations apply with even more force to the practice of the profession of public accountancy in the 1990's. We conclude that the Board's determination, embodied in Regulation 2, that the terms "accountant" and "accounting" are titles or designations likely to be confused with the official titles denoting licensure, is consistent with the intent and purpose behind section 5058 and the provisions of the related statutes, and is "reasonably necessary" to effectuate the purpose and intent underlying the legislation. (*Pitts* v. *Perluss* (1962) 58 Cal.2d 824, 832 [27 Cal.Rptr. 19, 377 P.2d 83].)

As further evidence that Regulation 2 is consistent with the legislative intent behind section 5058, it is significant that in the nearly half a century since the Board adopted the regulation, shortly after enactment of the statutory provision, the Legislature has not sought to amend section 5058 to defeat the Board's interpretation of the scope of its authority under section 5058. Although the Legislature twice amended section 5058, first in 1959 (Stats. 1959, ch. 310, § 42, p. 2228) and again in 1979 (Stats. 1979, ch. 25, § 1, p. 70), the substantive provisions with which we are here concerned have remained *unchanged* in the 44 years since the Board adopted Regulation 2. ■ In this regard, a presumption that the Legislature is aware of an administrative construction of a statute should be applied if the agency's

interpretation of the statutory provisions is of such longstanding duration that the Legislature may be presumed to know of it. (*Robinson* v. *Fair Employment & Housing Com.* (1992) 2 Cal.4th 226, 235, fn. 7 [5 Cal.Rptr. 782, 825 P.2d 767]; *El Dorado Oil Works* v. *McColgan* (1950) 34 Cal.2d 731, 739 [215 P.2d 4].)

Such a presumption should also be applied on a showing that the construction or practice of the agency has been made known to the Legislature. (*Robinson* v. *Fair Employment & Housing Com., supra,* 2 Cal.4th at p. 235, fn. 7; *Pacific Greyhound Lines* v. *Johnson* (1942) 54 Cal.App.2d 297, 303 [129 P.2d 32].) To this end we note that in 1965, an assemblyman from the Third Assembly District requested an opinion from the California Attorney General as to whether a member of the public, who is not licensed as a certified public accountant or public accountant to practice accounting in California, is in violation of the Accountancy Act when he or she uses the word "accounting" on a building directory or on an office door. The Attorney General's conclusion was that: "The use of the word 'accounting' on a building directory and an office door by an unlicensed individual is a representation to the public that such individual is skilled in accounting and that the user is qualified and ready to perform professional services. Such a representation by an unlicensed individual is in violation of the Accountancy Act . . . ." (46 Ops.Cal.Atty.Gen. 140, 141 (1965).)

Finally, the Legislature may also be presumed to have been aware of the decision filed in 1977 in *Hill, supra,* 66 Cal.App.3d 320, the only published California case to have addressed the right of an unlicensed person to use the terms in issue here. The *Hill* court concluded that use of a business name "A-Accounting—Jack M. Hill & Co." violated section 5050, and affirmed an order granting a preliminary injunction against use of the words "accountant" and "accounting" by the defendant in conjunction with his business title.

Section 5050 prohibits the practice of public accountancy by an unlicensed person. The *Hill* court reasoned that by use of the name in issue the defendant was holding himself out to the public as being engaged in the provision of professional accounting services. That conduct constituted the practice of public accountancy as defined in section 5051. "[T]he use of the title 'A-Accounting' like the use of the word 'accounting' on the building directory and office door can only be interpreted to mean that he is representing to the public that he is skilled in the practice of accounting and is qualified and ready to provide accounting services to the public, a

representation that an unlicensed person is prohibited from doing." (*Hill, supra,* 66 Cal.App.3d at 329.)

The *Hill* court recognized that an unlicensed person is permitted by law to offer certain basic accounting services to the public for compensation *when offered in connection with bookkeeping operations* (see §§ 5051, subd. (f), 5052), but concluded nonetheless that because the public may be misled concerning whether such a person *is licensed* when he or she uses the title "accountant" or the term "accounting services," use of those terms could be enjoined under the Accountancy Act. (66 Cal.App.3d at pp. 328-330.)[7] While the *Hill* court relied on sections 5050 and 5051, rather than section 5058 and Regulation 2 in upholding the injunction against use of the title "accountant" and term "accounting" by an unlicensed person in describing services offered to the public, the Legislature is presumed to be aware of that decision and to have acquiesced in the result, one identical to the result under Regulation 2 and the trial court ruling in this case.

In sum, we conclude that by inclusion of the catchall language in section 5058, the Legislature plainly intended that the enumerated list of five prohibited titles *not* be deemed an exclusive one. The Board's determination, embodied in Regulation 2, that the generic terms "accountant" and "accounting" fall within the legislatively defined class of titles or designations "likely to confuse the public," appears reasonably necessary to effectuate the purpose and intent underlying section 5058. Pursuant to section 5010, Regulation 2 is well within the scope of the rulemaking authority conferred upon the Board to "adopt . . . such regulations as may be reasonably necessary . . . for the . . . administration of [the Accountancy Act]." Moreover, for the reasons discussed, the Legislature may also be presumed to have acquiesced in the Board's long-standing interpretation of section 5058. The regulatory scheme thus validly prohibits unlicensed persons from using the

---

[7] The Court of Appeal below also cited the case of *Chen Chi Wang* v. *United States* (9th Cir. 1985) 757 F.2d 1000, as further authority consistent with the analysis and conclusions reached in *Hill. Chen Chi Wang* involved a taxpayer's attempt to quash an Internal Revenue Service summons issued to the financial services organization which had prepared the taxpayer's tax returns. At issue was a treasury regulation defining "accountant" for purposes of a statutory notice requirement for subpoenas issued to third party record keepers. (26 U.S.C. § 7609.) In determining that an accountant who is "registered, licensed, or certified under State law" falls under the definition of third party record keeper within the meaning of the treasury regulation, the *Chen Chi Wang* court relied on *Hill, supra,* 66 Cal.App.3d 320, for the proposition that, in California, only licensees under state law may represent themselves to the public as accountants. (757 F.2d at p. 1003.) The court went on to observe that, "The fact that a person performs some of the functions of an accountant (e.g., tax preparation) does not make that person an accountant if he or she is unlicensed, just as the fact that a person performs some of the functions of an attorney (a bank officer drafts a will; an insurance officer drafts an insurance contract) does not make that person an attorney." (757 F.2d at p. 1003.)

generic terms "accountant" or "accounting" standing alone, or in combination with other words that comprise a title or designation "likely to be confused" with the official titles reserved to the Board's licensees.[8]

## III

The Court of Appeal in this case reached substantially the same conclusion in construing the scope of section 5058,[9] and went on to hold: "The rulings by the United States Supreme Court in *Virginia Pharmacy* [*Va. Pharmacy Board. v. Va. Consumer Council* (1975) 425 U.S. 748 (48 L.Ed.2d 346, 365, 96 S.Ct. 1817)] and *Bates* [v. *State Bar of Arizona* (1977) 433 U.S. 350 (53 L.Ed.2d 810, 97 S.Ct. 2691)] make it clear that to satisfy the First Amendment, we must permit the use of [the generic terms 'accountant' and 'accounting'] if they are qualified by a warning or disclaimer that avoids their misleading impact."

 Respondent urges that section 5058, as interpreted by the Board in Regulation 2, prohibits *any and all use* of the generic terms "accountant" and "accounting" by unlicensed persons. As stated in respondent's brief on the merits, "[The Court of Appeal] decision did not go far enough by failing to unqualifiedly affirm the state's prohibition of the misleading terms in question rather than permitting unlicensed persons to use disclaimer language qualifying such terms." We disagree.

---

[8]Justice George draws a contrary conclusion respecting the legislative intent behind section 5058 and the related statutory provisions. His analysis appears grounded on a restrictive reading of those provisions of the act which define the practice of "public accountancy" and thereby circumscribe the Board's jurisdiction. (§§ 5051, 5052.) He interprets the statutory scheme as creating a "special class of accountants comprised of certified public accountants and public accountants," who are in turn a subgroup of the broader class of accountants. (Dis. opn. of George, J., *post*, at p. 1027.) According to Justice George's analysis, the unlicensed members of this class of accountants are "authorized . . . to perform a wide range of accounting services. . . ." (*Ibid.*) In short, under Justice George's interpretation of the statutory scheme, the majority of these unlicensed accountants fall *outside* the regulatory jurisdiction of the Board. With all due respect, this interpretation appears to us to belie the legislative intent underlying the regulatory scheme.

Justice George further reasons that because section 5051, the key provision defining the practice of public accountancy, permits an unlicensed person to perform many of the tasks that are also performed by licensed accountants "[as long as] he or she does not hold himself or herself out, solicit, or advertise for clients using the certified public accountant or public accountant designation," that person may use the title "accountant." (Dis. opn. of George, J., *post*, at pp. 1029, 1030.) Such an interpretation, however, essentially begs the question posed in this case: whether use of the terms "accountant" or "accounting" services, by virtue of their potential likelihood to be confused with the official titles denoting licensure, is tantamount to holding oneself out to the public "as qualified and ready to render professional service . . . as a public accountant for compensation." (§ 5051, subd. (a).)

[9]The Court of Appeal did not rely on Regulation 2 or consider its validity, holding only that because the terms "Accountant" and "Accounting" are misleading to the public they may not be used by unlicensed persons.

The First Amendment cases do not question the authority of the state to regulate misleading advertising. In *In re R. M. J.*, *supra*, 455 U.S. 191, a case dealing with lawyers' First Amendment commercial speech rights in the advertising of their services to the public, the United States Supreme Court explained:

"Commercial speech doctrine, in the context of advertising for professional services, may be summarized generally as follows: Truthful advertising related to lawful activities is entitled to the protections of the First Amendment. But when the particular content or method of the advertising suggests that it is inherently misleading or when experience has proved that in fact such advertising is subject to abuse, the States may impose appropriate restrictions. Misleading advertising may be prohibited entirely. But the States may not place an absolute prohibition on certain types of potentially misleading information, *e.g.*, a listing of areas of practice, if the information may also be presented in a way that is not deceptive. Thus, the Court in *Bates* [v. *State Bar of Arizona*, *supra*, 433 U.S. 350] suggested that the remedy in the first instance is not necessarily a prohibition but preferably a requirement of disclaimers or explanation. 433 U.S., at 375. Although the potential for deception and confusion is particularly strong in the context of advertising professional services, restrictions upon such advertising may be no broader than reasonably necessary to prevent the deception." (*In re R. M. J.*, *supra*, 455 U.S. at p. 203 [71 L.Ed.2d at p. 74].)

The high court's most recent commercial speech decisions have consistently applied the holding of *In re R. M. J.*, *supra*. Thus, in *Peel* v. *Attorney Disciplinary Comm'n of Ill.* (1990) 496 U.S. 91 [110 L.Ed.2d 83, 110 S.Ct. 2281], it was held that an attorney holding a "Certificate in Civil Trial Advocacy" from the "National Board of Trial Advocacy" could not be enjoined by the State of Illinois, which had no similar officially sanctioned certification program of its own, from advertising on his letterhead the truthful fact of his "certification" by that organization. Following its decisions in *Bates* v. *State Bar of Arizona*, *supra*, 433 U.S. 350, and *In re R. M. J.*, *supra*, 455 U.S. 191, the court concluded that Attorney Peel's letterhead was entitled to First Amendment protection since the facts stated thereon were "true and verifiable." (496 U.S. at p. 100 [110 L.Ed.2d at p. 94, 110 S.Ct. at p. 2288].)

The high court in *Peel* explained further: "Even if we assume that petitioner's letterhead may be potentially misleading to some consumers, that potential does not satisfy the State's heavy burden of justifying a categorical prohibition against the dissemination of accurate factual information to the public. *In re R. M. J.*, [*supra*,] 455 U.S., at 203." (*Peel* v. *Attorney Disciplinary Comm'n of Ill.*, *supra*, 496 U.S. at p. 109 [110 L.Ed.2d at p. 100, 110 S.Ct. at p. 2292].) The court went on to conclude:

"To the extent that potentially misleading statements of private certification or specialization could confuse consumers, a State might consider screening certifying organizations or requiring a disclaimer about the certifying organization or the standards of a specialty. *In re R. M. J.*, [*supra*,] 455 U.S., at 201-203. A State may not, however, completely ban statements that are not actually or inherently misleading . . . ." (*Peel v. Attorney Disciplinary Comm'n of Ill.*, *supra*, 496 U.S. at p. 110, fn. omitted [110 L.Ed.2d at pp. 100-101, 110 S.Ct. at pp. 2292-2293]; accord *Bates v. State Bar of Arizona*, *supra*, 433 U.S. at p. 384 [53 L.Ed.2d at p. 836]; *Va. Pharmacy Board. v. Va. Consumer Council*, *supra*, 425 U.S. 748, 771-772 [48 L.Ed.2d 346, 363-365].)[10]

We believe the Maryland Court of Appeals in *Comprehensive, etc.* v. *Maryland State Bd.* (1979) 284 Md. 474 [397 A.2d 1019, 4 A.L.R.4th 1188], correctly applied the commercial speech principles first announced by the high court in *Va. Pharmacy Board. v. Va. Consumer Council*, *supra*, 425 U.S. 748, and *Bates v. State Bar of Arizona*, *supra*, 433 U.S. 350, to the arena of state regulation of the profession of accountancy. In that case, the Comprehensive Accounting Service Company, which did not hold an enrollment

[10]Appellants cite the Eleventh Circuit's recent opinion in *Abramson v. Gonzalez* (11th Cir. 1992) 949 F.2d 1567 (*Gonzalez*), as supportive of their claim that they must be permitted to use the generic terms "accountant" or "accounting services" without any restriction. *Gonzalez* addressed the question of whether the State of Florida could ban unlicensed practitioners of psychology from holding themselves out to the public as "psychologists," consistent with First Amendment commercial speech doctrine. Relying principally on the high court's opinion in *Peel v. Attorney Disciplinary Comm'n of Ill.*, *supra*, 496 U.S. 91, the *Gonzalez* court concluded Florida's statute placed an unconstitutional restraint on the commercial speech rights of that state's unlicensed psychologists.

Critically, however, under the present state of the law in Florida, *anyone* can practice psychology without a license. That law is slated to change on October 1, 1995, after which date the profession of psychology in Florida will be *entirely circumscribed* by the Florida Department of Regulation. This anomaly was not lost on the *Gonzalez* court, which observed: "Florida, at least until October 1, 1995, does not require a license for the practice of psychology. The license granted to those who meet certain educational and professional requirements then, is not so much a license to practice as it is a license to speak and advertise." (949 F.2d at p. 1573.) The court concluded: "We hold that as long as Florida has not restricted the practice of psychology, the state may not prevent the plaintiffs from calling themselves psychologists in their commercial speech. If they are allowed to practice psychology, as they apparently are until October 1, 1995 when the law changes, they must be allowed to say truthful things about their work. As long as the plaintiffs do not hold themselves out as *licensed* professionals, they are not saying anything untruthful, for they are in fact psychologists and are permitted to practice that profession under current state law." (*Id.*, at p. 1576, italics in original.)

The relevant commercial speech principles invoked in *Gonzalez*, *supra*, 949 F.2d 1567, apply in equal fashion to this case. The holding of *Gonzalez* is plainly distinguishable, however, because here the statutory scheme under scrutiny has, as its very purpose, the regulation of the profession of public accountancy; its provisions circumscribe those functions which fall within the definition of "public accountancy" and are thereby expressly reserved to the Board's licensees.

certificate to practice public accounting in Maryland, challenged a Maryland statute that provided no person, partnership or corporation not holding an enrollment certificate " 'shall practice or hold himself or itself out to the public as "accountant" or "auditor" in connection with his own or any other name, nor describe or designate the services offered or performed by him or it as "accounting" or "auditing," with or without any other designation or description . . . .' " (397 A.2d at p. 1020.) Comprehensive Accounting Service Company argued that Maryland's express statutory ban unconstitutionally abridged its right. of free speech because the statute prevented uncertified persons, who were otherwise permitted to perform ordinary accounting work under that state's so-called "bookkeeping exception," from advertising the true nature of their services.

Invoking the rationale of the United States Supreme Court's decisions in *Va. Pharmacy Board. v. Va. Consumer Council, supra,* 425 U.S. 748, and *Bates v. State Bar of Arizona, supra,* 433 U.S. 350, the *Comprehensive* court concluded that the State of Maryland could not, consistent with the First Amendment, completely suppress the dissemination of truthful information about an entirely lawful business activity. (*Comprehensive, etc. v. Maryland State Bd., supra* , 397 A.2d at pp. 1023-1027.) But the *Comprehensive* court also acknowledged the high court's recognition in *Va. Pharmacy Board. v. Va. Consumer Council, supra,* and *Bates v. State Bar of Arizona, supra,* that, "in some cases it may be 'appropriate to require that a commercial message appear in such a form, or include such additional information, warning, and disclaimers as are necessary to prevent its being deceptive.' " (397 A.2d, at p. 1025, quoting *Va. Pharmacy Board v. Va. Consumer Council, supra,* 425 U.S. at pp. 771-772, fn. 24.)

As the rulings by the United States Supreme Court in *Va. Pharmacy Board v. Va. Consumer Council, Bates v. State Bar of Arizona, In re R. M. J.,* and *Peel v. Attorney Disciplinary Comm'n of Ill.,* all *supra,* make clear, in order to satisfy the First Amendment, appellants must be permitted to use the terms "accountant," "accounting," or "accounting services," if the use of those terms is further qualified by an explanation, disclaimer or warning stating that the advertiser is not licensed by the state, or that the services being offered do not require a state license, thereby eliminating any potential or likelihood of confusion regarding those terms.

In sum, section 5058 may constitutionally ban only those uses of the generic terms "accountant" and "accounting" that stand to potentially mislead the public regarding the user's licensee or nonlicensee status. The evidence in this case supports the long-standing interpretation of section 5058 as including within its ban the *unqualified* use of those terms as

misleading, to the public's detriment. In contrast, where the generic terms are used in conjunction with a modifier or modifiers that serve to dispel any possibility of confusion—for example, an express disclaimer stating that the "accounting" services being offered do not require a state license—their use in such a context may not be constitutionally enjoined.

## IV

The trial court's judgment and injunction provided, in pertinent part: "Plaintiffs and Cross-Defendants . . . who are not licensed as certified public accountants or public accountants are hereby permanently enjoined directly or indirectly from engaging in any of the following acts or practices: . . . [¶] b. Engaging in the practice of public accountancy without prior compliance with the requirements of sections 5000 et seq. of the Business and Professions Code relating to the licensing of accountants; provided, however, nothing herein is intended to enjoin unlicensed persons from preparing compilation reports, review reports, or audit reports, *although such activities are declared to be unlawful.*" (Italics added.)

 Appellants contended on appeal that the trial court exceeded its authority in holding the preparation of compilation reports, review reports and audit reports by unlicensed persons to be illegal. The Court of Appeal agreed, explaining that the Board had never alleged *in its cross-complaint* that appellants were engaged in such illegal activities, and presented no evidence at trial to establish that such activities are illegal; hence, the trial court erred in rendering judgment outside the issues raised by the pleadings or at trial. (7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 30, p. 472.) In its answer to the petition for review, respondent Board has asked this court to further consider whether the Court of Appeal erred in this regard.

We agree with the conclusions of the Court of Appeal respecting the procedural bar. In any event, the trial court's injunction, as worded, is erroneous; unlicensed persons are permitted to make "audits" and prepare "reports," when such is performed "as a part of bookkeeping operations." (§ 5052; *ante,* at p. 1011, fn. 3.)

## V

The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Panelli, J., and Arabian, J., concurred.

**MOSK, J.**—I dissent. The majority opinion not only violates the intent of the Accountancy Act (Bus. & Prof. Code, § 5000 et seq.),[1] as Justice George's dissent points out, but it also violates the First Amendment of the United States Constitution and article I, section 2(a) of the California Constitution.

On the first of these issues, the State Board of Accountancy (Board) in issuing regulations to effectuate the Accountancy Act (Cal. Code Regs., tit. 16, § 2, hereinafter Regulation 2) prohibits what the statute permits. That is, section 5052 allows nonlicensed persons to offer basic accounting services "in connection with bookkeeping operations." Thus, such persons are authorized by law to perform accounting; it is axiomatic that those who perform accounting are accountants. Even *People* v. *Hill* (1977) 66 Cal.App.3d 320, 325 [136 Cal.Rptr. 30], a case on which the majority rely, acknowledges that unlicensed persons perform accounting services.

In the face of specific statutory authorization, the Board has in Regulation 2 prohibited unlicensed persons to hold themselves out as accountants or as performing accounting services. The majority uphold this anomalous result by which a truthful representation specifically sanctioned by statute is labelled as misleading to the public.

Indeed, the holding of the majority would render improper a representation by an unlicensed person couched in the specific words of section 5052. The majority hold that an unlicensed person must include an "express disclaimer stating that the 'accounting' services being offered do not require a state license." Thus, such a person who advertises that he or she offers accounting services "in connection with bookkeeping operations," the very language used in section 5052, would run afoul of Regulation 2, according to the majority. An incomprehensible result indeed.

Nor do I agree with the majority's analysis of the purpose of section 5058. They attempt to circumvent application of the doctrine of *ejusdem generis* by holding that the purpose of the catchall phrase ("any other title or designation that is likely to be confused with 'certified public accountant' or 'public accountant' ") in that provision was to prevent the use of "other terms" the Legislature "had not then identified as misleading . . . or might become misleading in the future." The Legislature could not have had "accountant" in mind as a misleading term not then identified, since that designation was in common use then, as it is now. If the Legislature had wanted to prohibit use of the term by unlicensed persons, it would have done so.

The majority fail to mention that every jurisdiction but one that has considered the issue before us has held, on either statutory or constitutional

---

[1] All further statutory references are to the Business and Professions Code.

grounds, that use of the term "accountant" or "accounting" by unlicensed persons is proper. (*People* v. *Freedman* (1960) 144 Colo. 438 [356 P.2d 899]; *Florida Accountants Association* v. *Dandelake* (Fla. 1957) 98 So.2d 323 [70 A.L.R.2d 425]; *Comprehensive, etc.* v. *Maryland State Bd.* (1979) 284 Md. 474 [397 A.2d 1019]; *State* v. *Riedell* (1924) 109 Okla. 35 [233 P. 684, 42 A.L.R. 765]; *Burton* v. *Accountant's Society of Virginia, Inc.* (1973) 213 Va. 642 [194 S.E.2d 684]; *Tom Welch Accounting Service* v. *Walby* (1965) 29 Wis.2d 123 [138 N.W.2d 139].) Only a single intermediate appellate court in Texas has held to the contrary. (*Fulcher* v. *Texas State Bd. of Public Acc.* (Tex.Civ.App. 1978) 571 S.W.2d 366; *Texas State Board of Public Accountancy* v. *Fulcher* (Tex.Civ.App. 1974) 515 S.W.2d 95.)

I have serious doubts also whether the majority's conclusion complies with the First Amendment of the federal Constitution or with the California Constitution. While *Peel* v. *Attorney Disciplinary Comm'n of Ill.* (1990) 496 U.S. 91, 109-110 [110 L.Ed.2d 83, 100, 110 S.Ct. 2281, 2292-2293], does hold that some form of disclaimer may be required if commercial speech would be misleading without it, it also warns that the state has a "heavy burden of justifying a categorical prohibition against the dissemination of accurate factual information to the public." (*Ibid.*; see also *Anderson* v. *Department of Real Estate* (1979) 93 Cal.App.3d 696 [155 Cal.Rptr. 307].) As we point out above, the unadorned designations "accountant" and "accounting" are accurate as applied to unlicensed persons. The state's interest in preventing misrepresentation can be met by prohibiting persons who are not certified public accountants or public accountants to advertise themselves as such, or to use terms that indicate they have been licensed by the state, rather than insisting upon an express disclaimer, as the majority gratuitously require.

Furthermore, Regulation 2 is itself of questionable validity. In 1948, at the time it was adopted, the Board consisted entirely of licensed accountants. (Stats. 1945, ch. 1353, § 2, p. 2530.) The membership of the Board was broadened in 1961 to include public members (Stats. 1961, ch. 1821, § 39, p. 3877); presently, it consists of 12 persons, 8 of them accounting professionals licensed by the state, and 4 public members. (Bus. & Prof. Code, §§ 5000, 5001.) None of the members of the Board, according to amicus curiae, the Center for Public Interest Law, is an unlicensed person performing accounting work. Amicus curiae states that a large percentage of the accounting work available is of the type that is performed by both licensed and unlicensed accountants. The Board majority has an obvious pecuniary interest in preventing those without a license from advertising to the public that they are performing accounting services. Regulation 2 furthers that interest. The law has long looked with disfavor on rules adopted by a

regulatory body the majority of which consists of members of a profession with a pecuniary stake in restricting the rights of competitors. (*State Board* v. *Thrift-D-Lux Cleaners* (1953) 40 Cal.2d 436, 449 [254 P.2d 29]; *Allen* v. *California Board of Barber Examiners* (1972) 25 Cal.App.3d 1014, 1017 [102 Cal.Rptr. 368, 54 A.L.R.3d 910]; *Bayside Timber Co.* v. *Board of Supervisors* (1971) 20 Cal.App.3d 1, 12-14 [97 Cal.Rptr. 431].)

One additional point needs to be made. Court opinions should not rely on public opinion polls to support their conclusions. Judicial integrity suffers when judges hold a finger up to see which way the wind is blowing. Indeed, I doubt that poll results—which are notoriously inaccurate—should be admitted in evidence. (There may be one exception, however: in change of venue motions in criminal cases, surveys are often used merely to reveal if the crime, the victim and the alleged perpetrator are generally known in the community in which the case is to be tried.)

I would reverse the judgment of the Court of Appeal.

**GEORGE, J.**—I respectfully dissent.

The majority affirms a judgment granting a permanent injunction enjoining appellants from referring to themselves as "accountants" or describing the services they offer as "accounting." Appellants include Bonnie Moore, who possesses a college degree with a major in accounting, and officers and members of the California Association of Independent Accountants, a nonprofit membership organization affiliated with the National Society of Public Accountants. I would reverse the judgment.

As explained more fully below, the Legislature has not required that all accountants be licensed. Instead, it has defined a special class of accountants comprised of certified public accountants and public accountants who exclusively are authorized to perform certain types of accountancy and thus must be licensed. Other accountants are prohibited by Business and Professions Code section 5058[1] and related statutes from using these titles, or similar titles that might be confused with these titles.

The majority acknowledges that unlicensed accountants may perform basic accounting services, but holds that such persons may not call themselves "accountants" or describe the services they offer as "accounting." This holding is not based upon the language of section 5058, which does not expressly prohibit use of the terms "accountant" and "accounting" by unlicensed accountants, but upon a regulation promulgated by the Board of

---

[1]All further statutory references are to the Business and Professions Code unless otherwise indicated.

Accountancy (the Board) which prohibits such use of these terms. I disagree with the majority.

I would hold that the Legislature has authorized unlicensed accountants to perform a wide range of accounting services and did not intend to prohibit such persons from accurately referring to themselves as accountants or describing the services they provide as accounting. Because an administrative regulation may not expand the scope of the statute it purports to enforce, the Board lacked the authority to alter this statutory scheme by prohibiting unlicensed accountants from using the terms "accountant" and "accounting." Accordingly, I find it unnecessary to consider the impact of the First Amendment on this issue. (*Ashwander v. Valley Authority* (1936) 297 U.S. 288, 347 [80 L.Ed. 688, 711, 56 S.Ct. 466].)

"Pursuant to established principles, our first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.]" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)

A license is not required to practice "accountancy" in this state, but only to practice "public accountancy" as that term is defined. (§ 5050.)[2]

Section 5051 provides, in part, that an accountant is not engaged in the practice of public accountancy and, thus, does not require a license, if he or

---

[2]Section 5050 states, in part: "No person shall engage in the practice of public accountancy in this State unless such person is the holder of a valid permit to practice public accountancy issued by the board . . . ."

Section 5051 provides that a person is "engaged in the practice of public accountancy" if he or she provides "professional services that involve or require an audit, examination, verification, investigation, certification, presentation, or review, of financial transactions and accounting records . . . [¶] [or] [p]repares or certifies for clients reports on audits or examinations of books or records of account, balance sheets, and other financial, accounting and related schedules, exhibits, statements, or reports which are to be used for publication or for the purpose of obtaining credit or for filing with a court of law or with any governmental agency, or for any other purpose . . . [¶] [or] renders professional services to clients for compensation in any or all matters relating to accounting procedure and to the recording, presentation, or certification of financial information or data." (§ 5051, subds. (c)-(e).)

she: "(f) Keeps books, makes trial balances, or prepares statements, makes audits, or prepares reports, all as a part of bookkeeping operations for clients. [¶] (g) Prepares or signs as the tax preparer, tax returns for clients. [¶] (h) Prepares personal financial or investment plans or provides to clients products or services of others in implementation of personal financial or investment plans. [¶] (i) Provides management consulting services to clients. [¶] . . . [As long as] he or she does not hold himself or herself out, solicit, or advertise for clients using the certified public accountant or public accountant designation."[3]

Section 5052 provides that an unlicensed accountant may "contract[] with one or more persons, organizations, or entities, for the purpose of keeping books, making trial balances, statements, making audits or preparing reports, all as a part of bookkeeping operations, provided that such trial balances, statements, or reports are not issued over the name of such person as having been prepared or examined by a certified public accountant or public accountant."

Sections 5055 and 5056 state that no person other than a certified public accountant (C.P.A.)[4] or public accountant (P.A.)[5] may use those titles or any other title or designation "tending to indicate" that the person is a C.P.A. or P.A.

---

[3]This portion of section 5051, which the Legislature stated was "declaratory of existing law," was added to the statute after the trial in the present case. (Stats. 1989, ch. 489, § 3.) "Under settled principles, the version of the [statute] in force at present is the relevant legislation for purposes of this appeal. 'It is . . . an established rule of law that on appeals from judgments granting or denying injunctions, the law to be applied is that which is current at the time of judgment in the appellate court.' [Citations.]" (*Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 306, fn. 6 [138 Cal.Rptr. 53, 562 P.2d 1302]; *Building Industry Assn.* v. *City of Oxnard* (1985) 40 Cal.3d 1, 3 [218 Cal.Rptr. 672, 706 P.2d 285].)

[4]To use the title certified public accountant, a person must receive from the State Board of Accountancy (Board) a "certificate of certified public accountant" and hold a valid permit to practice. (§§ 5033, 5055.) In order to receive a certificate of certified public accountant, a person must earn a baccalaureate degree, with a major in accounting, from an accredited university or its equivalent (§ 5081.1), pass "written examinations in theory of accounts, in accounting practice, in auditing, in commercial law as affecting accountancy, and other related subjects as the certified public accountant members of the board may deem advisable" (§ 5082), and have from three to four years (depending upon the circumstances) of "public accounting experience" (§ 5083).

[5]To use the title public accountant, a person must receive from the Board a "certificate of public accountant" and be issued a permit to practice public accountancy. (§§ 5034, 5056.) For limited periods of time, the first being within six months of the enactment in 1945 of the prohibition against practicing public accountancy without a license and the last ending in 1968, a person who had been engaged in the practice of public accountancy prior to 1945 (and some others including veterans of the armed forces) could receive a "certificate of public accountant" without passage of an examination or meeting any educational requirements. (Stats. 1945, ch. 1353, § 2, p. 2537; Stats. 1967, ch. 709, § 1, p. 2082; Stats. 1968, ch. 519, § 1, p. 1160.)

In similar fashion, section 5058 provides, in pertinent part: "No person or partnership shall assume or use the title or designation 'chartered accountant,' 'certified accountant,' 'enrolled accountant,' 'registered accountant' or 'licensed accountant,' or any other title or designation *likely to be confused with* 'certified public accountant' or 'public accountant,' or any of the abbreviations 'C.A.,' 'E.A.,' 'R.A.,' or 'L.A.,' or similar abbreviations likely to be confused with 'C.P.A.' or 'P.A.' . . . ." (Italics added.)

What the foregoing statutes expressly prohibit is the use by unlicensed accountants of the titles C.P.A. or P.A., or any title or designation likely to be confused with C.P.A. or P.A. The latter titles are reserved for those accountants who are licensed to perform types of accountancy which unlicensed accountants may not perform. But the Legislature did not require that all accountants be licensed and, consistently, did not prohibit unlicensed accountants from using the title "accountant."

This interpretation of section 5058 is supported by one of the basic tenets of statutory construction, the principle of *ejusdem generis*, which instructs that " ' "where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. [It] is based on the obvious reason that if the [writer] had intended the general words to be used in their unrestricted sense, [he or she] would not have mentioned the particular things or classes of things which would in that event become mere surplusage." ' [Citations.]" (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1160 [278 Cal.Rptr. 614, 805 P.2d 873], fn. omitted.) This principle applies with particular force in the present case.

The "general words" in section 5058 form the catchall phrase, upon which the majority relies, prohibiting unlicensed persons from using "any *other* title or designation likely to be confused with 'certified public accountant' or 'public accountant' . . . ." (Italics added.) Considered apart from the context of the statute and the overall scheme of which the statute is a part, this. phrase could be construed to prohibit unlicensed accountants from using the term "accountant." But under this construction, which the majority adopts, the enumeration of examples which precede the general words becomes mere surplusage, in violation of the principle of *ejusdem generis*.

This is so because each of the enumerated examples of titles likely to be confused with the titles C.P.A. and P.A. is comprised of the term "accountant" coupled with a modifier, as are the titles C.P.A. and P.A. themselves. The principle of *ejusdem generis* leads me to conclude, therefore, that the

catchall phrase in section 5058 does not prohibit the use of the title "accountant" standing alone.

The majority states that the doctrine of *ejusdem generis* is inapplicable because its application "would frustrate the intent underlying the statute." (Maj. opn., *ante*, p. 1012.) The majority fails, however, to describe the method it uses to discern the statute's underlying intent. Instead, the majority simply states its conclusion without explaining its reasoning. I disagree that the doctrine of *ejusdem generis* is inapplicable; rather, it is a useful tool for determining the intent of the Legislature based on the language used in drafting the statute.

Had the Legislature meant to prohibit use of the unmodified term "accountant," it simply would have said so. Just as sections 5055 and 5056 expressly prohibit unlicensed accountants from using the titles "certified public accountant" and "public accountant," the Legislature could have added a similar provision expressly prohibiting unlicensed accountants from using the term "accountant" as well. Presumably the Legislature would have done so, had it intended to prohibit such accountants from calling themselves "accountants." " 'Where the [Legislature] has demonstrated the ability to make [its] intent clear, it is not the province of this court to imply an intent left unexpressed.' [Citation.]" (*Peralta Community College Dist.* v. *Fair Employment & Housing Com.* (1990) 52 Cal.3d 40, 50 [276 Cal.Rptr. 114, 801 P.2d 357].)

The majority agrees "that section 5058 does not itself expressly prohibit the use of the unmodified terms 'accountant' and 'accounting' " (maj. opn., *ante*, p. 1013) and relies instead on a regulation promulgated by the Board which provides in pertinent part: "The following are titles or designations likely to be confused with the titles Certified Public Accountant and Public Accountant within the meaning of Section 5058 of the Business and Professions Code: [¶] (a) 'Accountant,' 'auditor,' 'accounting,' or 'auditing,' when used either singly or collectively or in conjunction with other titles." (Cal. Code Regs., tit. 16, § 2.)

Such an administrative construction, "although not controlling, is entitled to great weight. [Citations.] . . . The final meaning of a statute, [however], rests with the courts. . . . ' "*Administrative regulations that alter or amend the statute or enlarge or impair its scope are void* and courts not only may, but it is their obligation to strike down such regulations." [Citation.] *And this is the rule even when, as here, "the statute is subsequently reenacted without change." [Citations.]'* " (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com., supra*, 43 Cal.3d 1379, 1388-1389, italics added.)

The above quoted regulation is invalid because it would expand the scope of section 5058. Nothing in section 5058, or in the statutory scheme of which it is a part, exhibits a legislative intent to prohibit unlicensed accountants from referring to themselves as accountants, or from describing the services they render as accounting. The Board may not expand the scope of section 5058 by enacting a regulation prohibiting conduct which section 5058 would permit.[6]

The majority concludes that by including the catchall phrase in section 5058, the Legislature vested the Board with discretion to prohibit unlicensed accountants from using the title "accountant" if the Board determined the public otherwise might be misled. I disagree for two reasons.

First, the Legislature would not have prefaced the catchall phrase in section 5058 with a list of examples, all of which consist of the term "accountant" coupled with a modifier, had it intended to prohibit, or to authorize the Board to prohibit, the use of the term "accountant" standing alone. Had the Legislature intended to vest the Board with unfettered discretion to prohibit the use of any title the Board found to be misleading, including the unadorned term "accountant," it would have used only the catchall phrase employed in section 5058.

By including the examples found in section 5058, the Legislature described the types of titles which might be confused with the titles C.P.A. and P.A. and which the Legislature intended to prohibit unlicensed accountants from using. The title "accountant," standing alone, does not fit this description. To ignore these examples, as does the majority, violates the doctrine of *ejusdem generis*, a doctrine which merely reflects our common experience with the manner in which language is used.

Second, the Board's decision to prohibit use of the term "accountant," because it may be confused with the terms C.P.A. and P.A., constitutes a significant alteration of the statutory scheme. The Accountancy Act creates a rather subtle distinction between "public accountancy," which only C.P.A.'s and P.A.'s may perform, and other types of accountancy, which unlicensed

---

[6]The majority also notes that both the Court of Appeal (*People* v. *Hill* (1977) 66 Cal.App.3d 320 [136 Cal.Rptr. 30]) and the Attorney General (46 Ops.Cal.Atty.Gen. 140, 141 (1965)) have concluded that unlicensed accountants are precluded from using the title "accountant." Citing the decision in *Pacific Greyhound Lines* v. *Johnson* (1942) 54 Cal.App.2d 297, 303 [129 P.2d 32], the majority concludes that it must be presumed that the Legislature was aware of these constructions of section 5058 when it thereafter amended the statute. I agree that these factors are significant, but, as recognized in *Pacific Greyhound Lines* v. *Johnson, supra,* 54 Cal.App.2d 297, 303, they "are only aids in statutory construction of a legislative enactment which is so general in its terms as to render an interpretative rule or regulation appropriate. They are not conclusive upon the courts."

accountants may perform. If the public finds this distinction confusing and erroneously believes that all accountants must be licensed, it must be left to the Legislature to alleviate this confusion by amending the statutes. Neither the Board nor this court possesses the authority to alter the statutory scheme established by the Accountancy Act, however beneficial such alterations might appear to be.

The majority finds persuasive the results of a public opinion poll, commissioned by the state, which posed the following questions: (1) "Do you think that persons who refer to themselves as accountants in advertising to the public are required to be licensed by the State of California," and (2) "Do you think persons who advertise accounting services to the public are required to be licensed by the State of California to offer such services?" More than half the number of persons queried believed that a license was required in both situations.

The majority concludes that the results of this survey "support the inference that members of the public who believe that licensing is required would assume that a person who uses the title 'accountant' and the designation 'accounting' to describe the services offered is licensed by the state. [Fn. omitted.]" (Maj. opn., *ante*, p. 1016.) This information, however, is not helpful in resolving the issue before us. It is not surprising that a person who erroneously believes that all accountants must be licensed would assume that a person using the title "accountant" is licensed. Just as significantly, the survey sheds no light on the relevant issue under section 5058; namely, whether the public is likely to confuse the terms "accountant" and "accounting" with the titles "certified public accountant" and "public accountant." Instead, the survey reveals only that a majority of the public erroneously believes that all accountants must be licensed.[7] It is beyond dispute that no license is required to perform certain types of accounting. The circumstance that a majority of the public believes otherwise is irrelevant.

Section 5058 prohibits unlicensed accountants from using any title that might be confused with the titles C.P.A. and P.A. Contrary to the conclusion reached by the majority, the statute was not intended to prohibit, or to authorize the Board to prohibit, an accountant's use of any term that the public might construe as implying licensure by the state. (Maj. opn., *ante*, p. 1004.)

The importance of this distinction is demonstrated by the following example. The majority concedes that unlicensed accountants may use the

---

[7]Assuming, without deciding, that the response to a public opinion poll is an appropriate basis for deciding an issue of statutory construction, a more useful query would have been: "Do you believe that persons who refer to themselves as accountants are certified public accountants?"

term "accountant" if "used in conjunction with a modifier or modifiers that serve to dispel any possibility of confusion . . . ." (Maj. opn., *ante*, pp. 1005, 1024.) Consider an unlicensed accountant who uses the title "accountant" but adds an express disclaimer that he or she is not a C.P.A. or P.A. Such a designation certainly would dispel any possibility that the term "accountant" might be confused with the titles C.P.A. or P.A. and, accordingly, would satisfy even the most stringent interpretation of section 5058. It would not, however, dispel possible confusion concerning whether the accountant was licensed by the state because, according to the poll upon which the majority relies, the public mistakenly believes that all accountants are required to be licensed. It can be seen, therefore, that the public's belief as to whether accountants must be licensed is irrelevant to the determination of the proper scope of section 5058.

Neither the Accountancy Act in general, nor section 5058 in particular, prohibits an unlicensed accountant from using the title "accountant." As the majority recognizes, it is *lawful* for *unlicensed* accountants to perform certain types of accounting services. Nothing in the statutory scheme prohibits unlicensed accountants who lawfully provide accounting services from referring to themselves as accountants, nor does anything in the act authorize the Board to prohibit by regulation what the Legislature has permitted by statute.

Accordingly, I would reverse the judgment of the Court of Appeal. I reach this conclusion on the basis of the plain meaning of the words of the statute as interpreted with the aid of settled principles of statutory construction, and in the absence of any clear expression of legislative intent to the contrary, without regard, of course, to whether it would be good public policy for the Legislature to prohibit unlicensed accountants, whatever their level of education and experience, from calling themselves "accountants."

Mosk, J., and Kennard, J., concurred.

Appellants' petition for a rehearing was denied August 27, 1992. Mosk, J., Kennard, J., and George, J., were of the opinion that the petition should be granted.