543 So.2d 249 (1989)
J. ALLEN, INC., Appellant/Cross-Appellee,
v.
CASTLE FLOOR COVERING, INC., and Lawyers Surety Corporation, Appellees/Cross-Appellants.
No. 87-02420.
District Court of Appeal of Florida, Second District.
April 7, 1989.
Rehearing Denied May 24, 1989.
*250 Dorry A. Bragg of William, McGuire & Manuel, Orlando, for appellant/cross-appellee.
Edna Elliott of Edna Elliott, J.D., P.A., Tampa, for appellee/cross-appellant Castle Floor Covering, Inc.
DANAHY, Judge.
This case involves complex contract litigation between the general contractor of a MacDill Air Force Base housing renovation project and its flooring subcontractor. When, at the completion of the job, the appellee/cross-appellant subcontractor, Castle Floor Covering, Inc., was paid for only some of its agreed-upon work, it sued the contractor, J. Allen, Inc., for the balance due under the terms of the subcontract. The general contractor counterclaimed for breach of the subcontract. Following a nonjury trial, the trial court found against both parties on all claims. We reverse in part.
We first note the following pertinent portions of the prime contract entered into between the Department of the Air Force, owner of the military base housing, and the general contractor:

APPLICATION. Provide flooring and related accessories as indicated and specified herein... . Apply flooring and accessories in accordance with the manufacturer's installation procedure... . Detailed requirements are as follows:
a. Adhesives. Adhesives shall be as specified for the specific application. Apply adhesives in accordance with the adhesive manufacturer's printed directions, unless specified or directed otherwise.
... .

APPLICATION OF SHEET VINYL FLOORING. ... After flooring is evenly fitted, roll back one-half of a sheet at a time and spread adhesive on the floor surface... . Embed seams and edges in a waterproof adhesive, spread approximately 4-inches from seams and edges.
Naturally, the subcontract between the parties incorporates the prime contract. As part of the subcontract Castle submitted Armstrong-brand literature indicating that Armstrong products would be used. This submittal was accepted by the owner. During the course of the flooring work, the owner's inspector noticed that Castle was not using Armstrong-brand adhesives, nor was the specified method of application being used. The owner refused to pay the interim payment requests for the work when the requests were submitted by Allen and insisted that the work be redone in accordance with the prime contract specifications. Allen and Castle tried to work out this time-consuming and costly problem, both insisting to the owner that the contract specifications were being met. The owner was adamant that the work be redone in its specified manner. The result was that Allen and Castle, after lengthy correspondence and discussions, entered into two addenda to the subcontract covering the respective responsibilities of each party in the rework.[1] Generally, *251 Allen agreed to pay Castle its prevailing rate for the labor and materials needed in the rework. Castle completed the rework to the satisfaction of Allen and the owner, but Allen refused to pay the entire amount reflecting the rework completed pursuant to the addenda. In the ensuing lawsuit, Castle sued Allen on an account stated, and Allen counterclaimed a breach of contract in performing the original work in an unworkmanlike manner, claiming the amount it held back as a set-off for the breach of the initial subcontract.
Following the bench trial, during which considerable documentary evidence and testimony was presented, the trial court disposed of the claims and counterclaims, after making findings of fact and conclusions of law. The net effect of the court's order was that the parties were equally at fault, and that, therefore, each party's claim or counterclaim was denied. We have carefully reviewed all the evidence and find that the trial court's factual findings are supported by competent, substantial evidence. We disagree only with the legal effect of these facts.
First, we note that although Castle claimed that it followed the manufacturer's recommended materials and installation methods, the prime contract specifications anticipated a hybrid method of installation which we have quoted above. Because the prime contract and its particular specifications are controlling, Castle did breach this contract when it failed to use the hybrid installation method. In its finding on this issue, the trial court stated:
If the parties found the language of the specifications in apparent conflict with the manufacturer's suggested method of application then that should have been resolved before doing the work. The parties were equally at fault.
This is the point at which the trial court erred in failing to give effect to the resolution of that apparent conflict by the parties. The parties resolved their controversy when they entered into the compromise and settlement as evidenced by Addenda Fifteen and Sixteen. It is clear that parties may enter into such a compromise and settlement of disputed claims so as to avoid litigation, a sound public policy. Utilities Comm'n v. Fla. Pub. Serv. Comm'n, 469 So.2d 731 (Fla. 1985); Robbie v. City of Miami, 469 So.2d 1384 (Fla. 1985). "Where a party accepts the benefits of a settlement agreement or a compromise ... and knows ... of the facts concerning that settlement, the party ratifies the settlement by accepting the benefits ... and he is thereafter estopped to attack the settlement." Kisz v. Massry, 426 So.2d 1009 (Fla. 2d DCA 1983). Allen was aware, before entering into the addenda that there would be a claim for damages on the rework required under the owner's interpretation of the prime contract specifications. By entering into the addenda, any rights and duties the parties had at that moment were merged into their settlement agreement, unless stated otherwise. Compare J.R. Bruce Corp. v. Ramsey, 500 So.2d 583 (Fla. 2d DCA 1986) (rights and duties in first lawsuit merged into settlement agreement and later purchase contract; each party gave up certain rights when settling; court may not reopen matter and attempt to determine who would have won the litigation without the settlement). The addenda and their attachments *252 conclusively show that there was no statement or reservation to the contrary.[2] The parties are knowledgeable and experienced business people in the construction industry. There is no indication of overreaching in this case. The addenda were entered into in an arm's-length transaction. The addenda, which themselves include provision for additional payment for labor and materials, thus constituted a compromise of the dispute which then existed between the parties. There was, therefore, no reason for the court not to give full legal effect to the addenda settling the dispute. See Amerifirst Fed. Sav. & Loan Ass'n v. Cohen, 499 So.2d 935 (Fla. 3d DCA 1986).
Settlement agreements are to be interpreted under principles of contract law, Don L. Tullis & Assocs. v. Benge, 473 So.2d 1384 (Fla. 1st DCA 1985), and it is undisputed that the rework, done pursuant to the settlement agreement, was done completely and satisfactorily. Under these circumstances, Castle was entitled to judgment for the balance due under the account as stated in its complaint without set-off for any preexisting dispute the parties had over the initial work performed. See Weingart v. Allen & O'Hara, Inc., 654 F.2d 1096, 1104 (5th Cir.1981) (language of addenda and attachments in compromise of parties' dispute not ambiguous as to the parties' intent; therefore, intent can be determined as a matter of law).
That portion of the judgment which disallowed Castle's claim on its account stated is reversed. The judgment is otherwise affirmed. The cause is remanded for entry of an order in favor of Castle for the balance due under the addenda.
CAMPBELL, C.J., and THREADGILL, J., concur.
NOTES
[1] The pertinent language of the addenda is as follows. As can be seen from the whole of the two documents, Addendum Sixteen deals with the same work as Addendum Fifteen, and can therefore be considered to supersede Fifteen where the two documents conflict.

ADDENDUM FIFTEEN: DESCRIPTION OF CHANGE: In accordance with our Subcontract (No. 285-11 dated 12/21/81), you are to install sheet vinyl flooring in [certain enumerated] buildings ... in accordance with our letter of March 23, 1983 and D.A.F. letter of March 22, 1983 with attachments (copies attached to and made a part of this Addenda). [sic]
ADDENDUM SIXTEEN: DESCRIPTION OF CHANGE: In accordance with our Subcontract (No. 285-11 dated 12/21/81), you are to proceed with necessary work in accordance with D.A.F. letters of 3/22/83, 11/22/83, and 2/16/84, J. Allen, Inc. letter to D.A.F. (4/6/84) and Castle Floor Covering Inc.'s letter of February 9, 1984 which letter shall prevail in the event of any conflict between the various correspondence.
Both addenda are signed as accepted by Allen and Castle.
[2] Although there is some discussion in the various correspondence preceding the execution of the addenda of "mitigation of damages," the testimony at trial explained that the mitigation went to the issue of choosing the original subcontractor to do the rework instead of going to a different flooring subcontractor so there would be no excuse about inflated prices or unnecessary rework. Furthermore, other correspondence from Allen to Castle stated that Allen would hold Castle "harmless" regarding the rework. This letter was one of the referenced letters in the addenda.