773 So.2d 126 (2000)
Daniel VERMUT and Susan Vermut, Appellants,
v.
GENERAL MOTORS CORPORATION, INC., Cadillac Division, Appellee.
No. 4D99-2400.
District Court of Appeal of Florida, Fourth District.
December 20, 2000.
John G. George of John G. George, P.A., Fort Lauderdale, for appellants.
Charles P. Mitchell and Steven R. Main of Rumberger, Kirk & Caldwell, P.A., Orlando, for appellee.
STONE, J.
We affirm the final judgment dismissing the Vermuts' action against General Motors with prejudice.
In 1997, the Vermuts brought this suit against GM for breach of warranty, and related counts, based on numerous repair problems experienced with their Cadillac Allante automobile. GM pled the affirmative defense of release, and a non-jury trial was conducted.
When the Vermuts purchased the Cadillac, it came with a resale value guarantee that was tied to the value of a particular model Mercedes. During the term of the guarantee, GM changed the vehicle to which the guaranteed resale value was tied from the Mercedes to a Jaguar.
The Vermuts filed an earlier suit against GM complaining that the change in resale comparison vehicle substantially decreased the value of the resale guarantee. That lawsuit, which did not allege repair problems, was eventually settled in 1995. Under the terms of the settlement, the Vermuts received $15,000 in cash and a $5,000 certificate good for the purchase of a new Cadillac. In return, they signed a release entitled "RELEASE OF ALL CLAIMS," which provided in pertinent part:
Know all men by these presents, that, Daniel and Susan Vermut ... ( ..."Releasors") do hereby release, acquit, and forever discharge GENERAL MOTORS CORPORATION ... from any and all past, present and future claims, demands, rights, causes of actions, judgments, executions, damages, liabilities, costs or expenses ... which Releasors might have now or acquire in the future against Releasee, known or unknown, which directly arise from, are related to or are in any way associated with the purchase, repair, operation, use or ownership *127 of that certain vehicle identified as a 1990 Cadillac Allante, VIN...
Releasors do hereby release, acquit and forever discharge and covenant to hold harmless Releasee, ... from any and all liability, claims and causes of action, alleged or which could have been alleged in that certain lawsuit pending in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida, captioned Daniel Vermut v. General Motors Corporation ..., Case Number XX-XXXXX-XX
* * *
Releasors do herein expressly acknowledge that ... the parties have not made any promises or representations other than as expressed herein and that in executing this Release, the parties have not relied on any promise or representation other than as expressed herein....
Releasors do hereby declare that the terms of the settlement have been completely read and are fully understood for the purpose of making a full and final compromise, adjustment and settlement of any and all claims disputed or otherwise, and for the express purpose of precluding forever any further claims by Releasors against Releasee for any purpose at any time arising out of or in any way associated with the purchase, repair, operation, use or ownership of that certain vehicle identified above.
Releasors do further represent and declare that no promise or agreement not herein expressed has been made to them and that this Release contains the entire agreement between and among the parties....
(emphasis added) The Vermuts were represented by counsel during the lawsuit. They both signed the release, as did their attorney.
Daniel Vermut testified in this action that when he reviewed the release, he questioned his attorney regarding the first paragraph which included the language, "repair, operation, use or ownership."
According to Daniel Vermut, GM's attorney assured them that the release stated "we do hereby release and forever discharge and hold harmless General Motors... from any and all liability, claims and causes of action, alleged or which could have been alleged in that certain lawsuit pending ... and named the lawsuit ... by case number." The attorney who represented GM in the initial lawsuit did not recall any such conversation, nor was there any reference to a conversation with the Vermuts or their attorney at the time in question. The Vermuts never suggested that any of the language be changed or deleted.
GM's attorney, Ubaldo Perez, stated that he would not have told the Vermuts or their attorney that the release only pertained to the lawsuit because that would have been contrary to the plain language of the release. Furthermore, the release was drafted as a general release because GM was trying to "buy its peace as to this vehicle ... They didn't want this car to come back in a year or two years with, well, now the windshield wipers don't work and we want additional money."
Joseph Lines, in-house counsel for GM, testified that his concern in getting the release was that GM obtain "a full a complete release of all claims related to the vehicle." He stated that GM wanted a full release. Lines further stated that he and Perez had learned from a courthouse search that the Vermuts were "litigious;" hence, GM would not have accepted a partial release to settle their claim.
Susan Vermut signed the release without reading it. At the time of the initial lawsuit, the Vermuts were already experiencing repair problems with the car and they were considering filing a claim against GM for the defects. Susan Vermut admitted that when she read the release for the first time, she concluded that the release was as to any claims whatsoever regarding the car.
*128 It is well established that the language in a release is the best evidence of the parties' intent and that "when that language is clear and unambiguous, the courts cannot indulge in construction or interpretation of its plain meaning." Hurt v. Leatherby Ins. Co., 380 So.2d 432, 433 (Fla.1980); see also Bellefonte Ins. Co. v. Queen, 431 So.2d 1039 (Fla. 4th DCA 1983).
The record reflects that the breadth of coverage of the Vermuts' release is clear and unambiguous. Furthermore, the trial court's finding that the release covered the claims in the instant lawsuit was made after hearing testimony of the parties and reviewing the release and, accordingly, comes to this court "clothed with a presumption of correctness." Bimonte v. Martin-Bimonte, 679 So.2d 18 (Fla. 4th DCA 1996). Therefore, even assuming that the release was ambiguous, as claimed by the Vermuts, the trial court's resolution of that ambiguity in favor of GM is supported by the record and must be upheld on appeal. See Malt v. Deese, 399 So.2d 41 (Fla. 4th DCA 1981).
As to the other issues raised, we also find no reversible error or abuse of trial court discretion.
GUNTHER and FARMER, JJ., concur.