800 So.2d 239 (2001)
STATE of Florida, Appellant,
v.
Robert VANDONICK, Appellee.
No. 2D00-243.
District Court of Appeal of Florida, Second District.
June 1, 2001.
Robert A. Butterworth, Attorney General, Tallahassee, and Dale E. Tarpley, Assistant Attorney General, Tampa, for Appellant.
Steven G. Lavely, Bradenton, for Appellee.
SALCINES, Judge.
The State of Florida appeals the restitution order which limited Robert Vandonick's liability to the sum specified in a civil insurance settlement agreement. Based on the facts in the present case, we affirm because the express terms of the release and settlement agreement bound the parties in both the criminal prosecution and the civil litigation.
Vandonick was charged with reckless driving and third-degree felony battery for an incident which occurred on December 24, 1998. An amended information alleged that, while driving an automobile, Vandonick injured Alice Jane Berry by intentionally touching or striking her. On May 11, 1999, a release and settlement agreement was executed by the victim's father, James S. Berry, individually and for and on behalf *240 of Ms. Berry, an incapacitated person. This agreement stated that for the sum of $50,000.00, Vandonick and his insurance company, Allstate Insurance Company, were released and forever discharged
of and from all actions, causes of actions, injuries, damages to persons and property, judgments, executions, claims and demands in every sort of nature whatsoever, which [Ms. Berry and Mr. Berry] may now have or hereafter have against [Vandonick] ... from the beginning of the world to date and the day of these presents, including any claims, demands, actions, or causes of action arising out of the incident of December 24, 1998, in which it is alleged that [Ms. Berry] received bodily injuries as a result of an accident on December 24, 1998.
The release and settlement agreement concluded with the following paragraph:
[T]he terms of this Release and Settlement have been ... accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, resulting from the aforementioned incident and it is specifically agreed that this release shall be a complete bar to all claims or suits for injuries or damages in whatever nature resulting or to result from said incident of December 24, 1998.
On September 8, 1999, almost four months after the release and settlement agreement had been executed, Vandonick entered a plea of no contest to reckless driving and to the lesser included offense of culpable negligence. Thereafter, following a restitution hearing, the trial court entered an order finding that restitution in the amount of $50,000.00 had been agreed to by Vandonick and Ms. Berry. The parties' understanding was evidenced by the release and settlement agreement. The court noted that the victim's medical bills far exceeded the $50,000.00 figure; however, the restitution amount was limited to that which Vandonick and Ms. Berry had previously agreed. The court ordered $50,000.00 in restitution to be paid by Vandonick.
This is a case of first impression in Florida. However, we note that settlements are governed by the rules for the interpretation of contracts. Robbie v. City of Miami, 469 So.2d 1384, 1385 (Fla.1985). Such agreements are highly favored and will be enforced whenever possible. Id. Upon entering into the release and settlement agreement, any rights and duties the parties had at that moment were merged into the agreement, unless otherwise stated. See J. Allen, Inc. v. Castle Floor Covering, Inc., 543 So.2d 249, 251 (Fla. 2d DCA 1989).
Considering the explicit language in the release and settlement agreement and the fact that it was executed before Vandonick entered his plea, we hold that Ms. Berry is precluded from recovering, in restitution, more than the $50,000.00 she has already been allotted pursuant to the settlement agreement. Accordingly, we affirm.
Affirmed.
WHATLEY, A.C.J., Concurs.
NORTHCUTT, J., Dissents with opinion.
NORTHCUTT, J., dissenting.
With due respect and esteem for my colleagues, I would reverse. When determining a proper restitution amount the sentencing court simply was not bound by the civil settlement and release between the defendant and the victim.
For one thing, the State was not a party to the settlement transaction, nor were its interests represented. This is significant because restitution is only partially founded *241 on the victim's right to be compensated. Just as important is the State's right to have the victim made whole by the perpetrator. The State's interest coincides with the victim's only insofar as the latter seeks compensation for her losses. Beyond that, restitution serves broader societal purposes: it is a deterrent; it is rehabilitative; it is retributive; it requires the perpetrator, rather than the taxpayers, to absorb some or all of the financial impact of the victim's injuries. See Glaubius v. State, 688 So.2d 913 (Fla.1997). Therefore, although a victim is entitled to compromise her civil damages claim as she sees fit based wholly on self-interest, she is not empowered to foreclose the State's demand that the perpetrator pay full restitution. See Baker v. State, 616 So.2d 571 (Fla. 5th DCA 1993) (holding that court could order restitution even though defendant's debt to victims had been discharged in bankruptcy and victims did not object to discharge).[1]
Moreover, the courts have long recognized that setting a restitution amount is a nondelegable judicial duty. Wise v. State, 614 So.2d 9 (Fla. 2d DCA 1993). If a court cannot imbue anyone else with authority to establish an appropriate restitution amount, neither can anyone else bestow that authority upon herself and thereby usurp the court's power to perform its duty.
Finally, the restitution statute mandates that the court shall order the defendant to make restitution for "1. Damage or loss caused directly or indirectly by the defendant's offense; and 2. Damage or loss related to the defendant's criminal episode." § 775.089(1)(a), Fla. Stat. (1997). When assessing the victim's damage or loss, her prior settlement with the defendant would be a relevant consideration if the settlement amount reflected the true value of the victim's claim. But a variety of circumstances might induce a victim to settle her claim for less than her actual damagesproblems of proof, for example, or her immediate financial need, or the inadequacy of the defendant's liability insurance policy limits. Such considerations should have no bearing on the court's statutory duty to order restitution for the damage or loss caused by the defendant's criminal conduct. Where, as here, the settlement was for a sum which was less than the victim's damage or loss, an order imposing restitution based solely on the amount of the settlement would violate the clear requirements of the statute.
These legal principles do no damage to the tenets of contract law under which my associates endeavor to decide this case. A contract is deemed to incorporate the law in existence at the time the contract is made. Northbrook Prop. & Cas. v. R & J Crane Serv., Inc., 765 So.2d 836 (Fla. 4th DCA 2000). Thus, the defendant and victim are deemed to have understood that the victim could not, and did not, waive either the State's right to seek full restitution or the court's authority to impose it.
The sentencing court erred when treating the settlement contract between the victim and defendant as a limitation on its authority to set a proper restitution amount. In so doing, it improperly ceded its judicial power to the contracting parties, and wholly foreclosed the State's right to pursue restitution consistent with the *242 State's interests separate and apart from the victim's.
NOTES
[1] The notion that the State has an interest in compelling restitution notwithstanding the victim's desire or agreement to the contrary is evident in section 960.0025, Florida Statutes (1997). It provides that if the Department of Corrections cannot locate the person or organization designated by the court to receive restitution, or if the designated payee refuses to accept the payment, the funds collected are to be paid to a direct-support organization established pursuant to statute to assist in addressing the needs of crime victims.