830 So.2d 208 (2002)
David C. PLUMPTON and Mary Plumpton, Appellants,
v.
CONTINENTAL ACREAGE DEVELOPMENT CO., INC., Appellee.
No. 5D01-3860.
District Court of Appeal of Florida, Fifth District.
November 8, 2002.
*209 Henry J. Martocci, Rockledge, for Appellants.
Elizabeth Siano Harris, Titusville, for Appellee.
PLEUS, J.
The Plumptons appeal a summary final judgment in favor of Continental Acreage Development Company ("Continental") finding that the Plumptons' contractual claims against Continental were barred by a written release. They argue that the trial court erred in granting summary judgment because the release was ambiguous, thus creating a genuine issue of material fact regarding the scope of the release.
This court has jurisdiction pursuant to Florida Rule of Appellate Procedure 9.110(k)[1]. We have reviewed the order granting summary judgment de novo and conclude that the trial court was correct in holding that the release was clear and unambiguous and barred the Plumptons' claims even though the release was executed before the contracts were assigned to the Plumptons. Accordingly, we affirm the final judgment as to Counts I and II.
On August 19, 1985, Eric and Lori Beard signed a contract (the Beard contract) to buy from Continental a parcel of land in a subdivision known as Fawn Lakes Estates. The contract established a closing date "15 days after road completion." On February 8, 1986, the Beards assigned their rights in the Beard contract to the Plumptons.
On January 15, 1986, Dorothy Jasperson signed two contracts (the Jasperson contracts) to buy from Continental two parcels of land in Fawn Lakes Estates. As in the Beard contracts, the contracts were to be closed within 15 days of the road completion.
On May 1, 1987, the Plumptons unsuccessfully attempted to close on the Beard contract. At the same time, Dorothy Jasperson tried unsuccessfully to close on her two contracts.[2]
Prior to the unsuccessful closing on the Japserson contracts, on April 8, 1987, separate litigation involving Jasperson and Continental, hereafter referred to as the "Florida National Bank litigation," ensued over property in another subdivision known as Hidden Lakes. Jasperson and Continental settled their claims against each other by stipulation dated December 10, 1987. The stipulation included the following release language:

*210 Except for the rights and obligations expressed in the paragraphs above, each of the parties do hereby release each other from any and all liabilities and claims from the beginning of the world to the days present.
Sometime in late 1989 or early 1990, and two years after the release, Jasperson assigned her rights in the Jasperson contracts to the Plumptons. In March 1990, the Plumptons sued Continental for breaching the Jasperson contracts and the Beard contract.
Over the next seven years, minimal activity occurred in the case. In May 1997, Continental filed a motion for summary judgment alleging that the Plumptons' claims were barred by Jasperson's release. That motion was denied. In September 1998, the lower court dismissed the case for lack of prosecution, but that order was reversed on appeal to this court in Plumpton v. Continental Acreage Development Co., 743 So.2d 554 (Fla. 5th DCA 1999).
In July 2001, Continental filed a motion for summary judgment "as to Counts I and II only." Like the first motion for summary judgment, this motion argued that the Plumptons' claims in Counts I and II were barred by Jasperson's release. This time, the lower court agreed with Continental and granted its motion. In its order, the court found that:
On its face, the language found in the release is clear and unambiguous and would release Defendant from any and all claims of any type whatsoever which had accrued up to and through December 10, 1987. As such, the claims in Count I and Count II of the complaint would be barred.
The court entered a final judgment on October 18, 2001. The Plumptons timely appealed. We address first the Plumptons' argument that the release had a latent ambiguity requiring resort to parole evidence.
In construing the terms of a general release, we are guided by established principles governing the construction of contracts. "Where the language of the release is clear and unambiguous, we cannot indulge in construction or interpretation of its plain meaning." Hurt v. Leatherby Ins. Co., 380 So.2d 432, 433 (Fla. 1980); Hold v. Manzini, 736 So.2d 138, 141 (Fla. 3d DCA 1999). An exception to this rule occurs when latent ambiguity exists. Latent ambiguity exists when "the language in a contract is clear and intelligible and suggests a single meaning, but some extrinsic fact or extraneous evidence creates a need for interpretation or a choice between two possible meanings." Bunnell Medical Clinic, P.A. v. Barrera, 419 So.2d 681, 683 (Fla. 5th DCA 1982).
While the Plumptons concede that the terms "any and all liabilities and claims" appear to be clear and unambiguous, they argue that because the release language was contained in a settlement of the Florida National Bank litigation, a latent ambiguity exists as to the release's application to claims outside that litigation. However, the terms "any and all liabilities and claims" are modified by the terms "from the beginning of the world to the days present." It is well-established that this type of all-inclusive language will bar all claims which have matured prior to executing the release. See Sottile v. Gaines Construction Co., 281 So.2d 558 (Fla. 3d DCA 1973) rev. denied, 289 So.2d 737 (Fla.1974), receded from on other grounds, Brown v. Brown, 432 So.2d 704 (Fla. 3d DCA 1983) (holding that release barring "all ... claims ... from the beginning of the world to the day of the date of these presents" will generally be regarded as embracing all claims or demands which have matured at the time of its execution). *211 See also State v. Vandonick, 800 So.2d 239, 240 (Fla. 2d DCA 2001) (holding that release of claims "from the beginning of the world to date and the day of these presents" meant that "any rights and duties the parties had at that moment were merged into the agreement"); Hold, above, at 140-141 (release containing words "from the beginning of the world to the day of these presents" was clear and unambiguous and barred "all claims which had accrued as of the date of its execution"). This rule appears to hold true even when the mature claims are unrelated to the litigation that resulted in the release. See Sottile; Mulhern v. Rogers, 636 F.Supp. 323 (S.D.Fla.1986).
By contrast, releases barring particular types of claims generally contain restrictive qualifying language such as all claims "arising out of the accident dated ..." or "arising out of this litigation." See, e.g., Raveson v. Walt Disney World Co., 793 So.2d 1171 (Fla. 5th DCA 2001) (holding that release limiting claims to those "arising out of ... horseback riding" was clear); Vermut v. General Motors Corp., Inc., Cadillac Div., 773 So.2d 126, 127 (Fla. 4th DCA 2000) (holding that release barring claims "arising out of" the purchase, repair, operation, use or ownership of a car was clear).
In the instant case, we find the clear and unambiguous language of the release was a complete defense to these claims, even though they were unrelated to the litigation from which the release resulted.[3]
The Plumptons also argue that Jasperson's release of claims against Continental does not preclude them from pursuing claims against Continental because she assigned all her rights, including the right to sue Continental for breach of contract, before she executed the release. In fact, they claim Jasperson had no claims on the parcels at issue "at any time since January 15, 1986, that being the date upon which the contracts for sale and purchase had been executed as well as the date of the assignment of the contracts to Appellants-Plaintiffs."
This argument is fatally flawed for two reasons. First, the Plumptons failed to raise this argument below, and have therefore failed to preserve it for appeal. Second, the Plumptons' argument is contradicted by the undisputed facts, as previously established by David Plumpton in depositions and affidavits. Specifically, the Plumptons argue on appeal that Jasperson assigned her rights to them on January 15, 1986, the same day she contracted with Continental. However, both David Plumpton and Dorothy Jasperson alleged in affidavits that the contracts were assigned "sometime after the date of execution" of the contracts. In his deposition, David Plumpton was not sure of the exact date the assignments were made, but repeatedly asserted that they were made "just before" filing suit against Continental, or within a few months of March *212 1990. Plumpton testified that he took the assignments in 1990 with the intent to file suit on the contracts because he believed Continental breached the contracts on May 1, 1987. This evidence is uncontradicted by any other record evidence. Consequently, the Plumptons' assertion that the contracts were assigned before Jasperson executed the release is patently inaccurate.[4]
AFFIRMED.
COBB and SHARP, W., JJ., concur.
NOTES
[1] The final judgment in this case is actually a partial final judgment. Both the motion for summary judgment and the order granting summary judgment pertain only to Counts I and II of the three-count complaint. Although the subsequent final judgment stated that "Plaintiff shall take nothing and go hence without day," only Counts I and II were adjudicated on the merits. Appellee argues that Count III was dismissed back in 1995 for lack of prosecution. However, the trial court signed a subsequent order allowing the case to remain pending. Thus, it appears that Count III has never been adjudicated on the merits. Because the third count involved a separate transaction, this court has jurisdiction to resolve the appeal of the final judgment as to Counts I and II. See Fla. R.App. P. 9.100(k); see also Mendez v. West Flagler Family Association, 303 So.2d 1 (Fla.1974).
[2] Counts I and II involve the Jasperson contracts. Count III involves the Beard contract.
[3] Also, as the trial court correctly noted, the parol evidence proffered in this case was inadmissible because it constituted a claim of unilateral mistake. Specifically, Dorothy Jasperson claimed in her affidavit that she informed her attorney that she did not intend to settle any claims with Continental other than those in the Florida National Bank litigation. Jasperson claimed her attorney assured her the release would not bar any outside claims, such as the ones in this lawsuit. "The clear and unambiguous terms of a release may not be changed upon a claim of unilateral mistake where that mistake results solely from the want of due care and diligence exercised by persons of reasonable prudence under the same circumstances." Dean v. Bennett M. Lifter, Inc., 336 So.2d 393, 395 (Fla. 3d DCA 1976).
[4] As record support for their argument, the Plumptons cite to the affidavits and attached exhibits of David Plumpton and Dorothy Jasperson. As noted above, the affidavits establish that the assignments were made "sometime after the date of execution" of the contracts. Of course, "sometime after" could be construed as occurring before the release was signed, but then the affidavits would directly contradict David Plumpton's prior deposition testimony, which is improper. See, e.g., Weesner v. United Services Auto. Ass'n, 711 So.2d 1192 (Fla. 5th DCA 1998).