973 So.2d 1212 (2008)
Robert N. CHURCHVILLE and Joyce Churchville, his wife, Appellants,
v.
GACS INCORPORATED, Ryder Automotive Operations, Inc., d/b/a Delavan, Ryder Automotive Carrier Group, Inc., and Ryder Automotive Carrier Services, Inc., Appellees.
No. 1D04-2631.
District Court of Appeal of Florida, First District.
January 23, 2008.
*1213 Robert B. Guild and Floyd L. Matthews, Jr., of Spohrer, Wilner, Maxwell & Matthews, Jacksonville, for appellants.
Michael G. Tanner and Timothy J. Conner, of Holland & Knight LLP, Jacksonville, for appellees.
WOLF, J.
Robert Churchville and Joyce Churchville appeal from a final summary judgment against, them in their tort action against GACS, Inc. (GACS). The Churchvilles claim that the term "affiliate," as used in the Resignation Agreement, Waiver and Release (Release), which settled Mr. Churchville's workers' compensation claim against his employer for injuries sustained in the same accidents giving rise to his tort action against GACS, was ambiguous and, thus, did not relieve GACS of liability. The Churchvilles also assert that the language of the Release was inapplicable to their pending tort claim. We determine that the term "affiliate," as used in the context of the Release, was unambiguous and that the specific language of the Release applied to tort claims. We, therefore, affirm the final summary judgment.
On June 7, 1999, Robert and Joyce Churchville filed a personal injury claim against GACS; Ryder Automotive Operations, Inc. (RAO), d/b/a Delavan Industries, Inc. (Delavan); Ryder System, Inc. (Ryder System); Ryder Automotive Carrier Group, Inc. (RACG); and Ryder Automotive Carrier. Services, Inc. (RACS). The complaint alleged that on February 5, 1996, while employed as a car carrier driver by Commercial Carriers, Inc. (Commercial Carriers), n/k/a Allied Systems, Ltd. (Allied Systems), Mr. Churchville suffered personal injuries while loading or unloading and while tying or untying a vehicle on a Delavan car carrier/trailer utilizing a manual ratchet tie-down system. The complaint alleged that a second injury occurred *1214 on December 3, 1997, when Mr. Churchville (then employed by successor entity Allied Systems) was tying/untying another vehicle on a Delavan car carrier utilizing a ratchet tie-down system. On February 4, 2000, the Churchvilles filed an amended complaint relative to the two accidents.
GACS is the surviving corporation after a series of mergers among the corporate parties to this case: Delavan merged into RAO in 1991; RAO and RACS merged into Allied ACS, Inc., in 1998; and the name subsequently was changed to GACS. GACS admits "it is the responsible party for any liability of [the named parties RAO, d/b/a Delavan; RACG, and RACS] in this suit."
Mr. Churchville filed workers' compensation claims against Commercial Carriers and Allied Systems for the 1996 and 1997 injuries. The claims were settled in April 2000 (i.e., after the tort lawsuit was filed) pursuant to the Release which was signed by Mr. Churchville and by an "authorized agent" of Commercial Carriers, n/k/a Allied Systems, on April 28, 2000. Mr. Churchville's attorney participated in the settlement transaction, including the execution of the Release, which was drafted and prepared by the lawyer representing Mr. Churchville's employer and its workers' compensation carrier. The opening paragraph of this Release states,
COMMERCIAL CARRIERS, INC., n/k/a ALLIED SYSTEMS, LTD., as well as ALLIED SYSTEMS, LTD. and its subsidiaries, affiliates, parent companies, and their directors, officers, successors, assigns, transferees, employees, representatives, and agents, both current and former, and both individually and collectively (all hereinafter referred to as "AS") and ROBERT N. CHURCHVILLE and his heirs, assigns, executors and administrators, (hereinafter collectively referred to as "CHURCHVILLE") enter into this Resignation Agreement, Waiver and Release (hereinafter "Agreement") effective the date on which the Joint Petitions and Stipulations pertaining to the settlement of CHURCHVILLE'S workers' compensation claims arising out of the accident he sustained while working for COMMERCIAL CARRIERS, INC., n/k/a ALLIED SYSTEMS, LTD on FEBRUARY 5, 1996 and the accident he sustained while working for ALLIED SYSTEMS, LTD. on DECEMBER 3, 1997 are approved by a Judge of Compensation Claims.
(Emphasis added.)
The Release does not specifically define "affiliates" or mention GACS. The major issue before us is whether GACS is an affiliate of Allied Systems and covered by the Release.
At the time Mr. Churchville executed the Release in April 2000, an entity known as Allied Holdings, Inc. was the "parent of the Allied subsidiaries." Allied Holdings, Inc. owned 100% of the stock of Allied Automotive Group, Inc. (AAG), and Mr. Churchville's employer, Allied Systems, and GACS were each a subsidiary of AAG. AAG owned 100% of the stock of GACS, and it owned an 80% partnership interest in Allied Systems. This can be expressed diagrammatically as follows:
*1215 
GACS and Allied Systems have been characterized by the Churchvilles as "sister" entities.
"The standard of review governing a trial court's ruling on a motion for summary judgment posing a pure question of law is de novo." Major League Baseball v. Morsani, 790 So.2d 1071, 1074 (Fla.2001). Whether an agreement is ambiguous is a pure question of law the resolution of which is to be reviewed de novo. See Dows v. Nike, Inc., 846 So.2d 595, 601 (Fla. 4th DCA 2003).
"The validity and effect of a settlement and release are governed by contract law." Travelers Inc. Co. v. Horton, 366 So.2d 1204, 1205 (Fla. 3d DCA 1979). A court may look beyond the language of a contract only when the document's terms are ambiguous. See Plumpton v. Cont'l Acreage Dev. Co., Inc., 830 So.2d 208, 210 (Fla. 5th DCA 2002).
The Churchvilles assert that the term "affiliates" creates an ambiguity; thus, GACS cannot assert protection from the release granted to Allied Systems. The term "affiliate" is defined as "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent or sibling corporation." Black's Law Dictionary 59 (7th ed. 1999). That definition clearly describes the relationship between the sister corporations GACS and Allied Systems.
The Churchvilles offer several definitions which exclude sibling corporations and include only parents and subsidiaries. They assert that this creates an ambiguity. We must, however, determine whether ambiguity exists in the context of the document. The release is in favor of Allied Systems, "its subsidiaries, affiliates, [and] parent companies." Because the term "affiliates" is expressly listed in the Release in a series along with Allied Systems'"subsidiaries" and "parent companies," the statutory construction principle known as noscitur a sociis (it is known by its associates) supports the conclusion that "affiliates" are neither subsidiaries nor parent *1216 companies.[1]See People ex rel. Lungren v. Superior Court of the City & County of San Francisco, 14 Cal.4th 294, 58 Cal. Rptr.2d 855, 926 P.2d 1042, 1050 (1996) (noting that, "`[i]n accordance with this principle of construction, a court will adopt a restrictive meaning of a listed item if acceptance of a more expansive meaning would make other items in the list unnecessary or redundant, or would otherwise make the item markedly dissimilar to the other items in the list'") (quoting Moore v. California State Bd. of Accountancy, 2 Cal.4th 999, 9 Cal.Rptr.2d 358, 831 P.2d 798, 805 (1992)). In other words, one may presume that the drafters of the Release did not include a pointless term in the series. See Hillsborough County v. Fla. Rest. Ass'n, Inc., 603 So.2d 587, 590 (Fla. 2d DCA 1992) ("We must assume that the legislature did not enact a pointless provision."). "Language in a document is ambiguous when it is uncertain in meaning and may be fairly understood in more ways than one and is susceptible of interpretation in opposite ways." Barnett v. Destiny Owners Ass'n, Inc., 856 So.2d 1090, 1092 (Fla. 1st DCA 2003) (relying on Friedman v. Virginia Metal Prods. Corp., 56 So.2d 515, 517 (Fla.1952)).
The Churchvilles ask this court to accept that these two entities sharing the same parents are not affiliates. We are unable to come up with another reasonable interpretation in the context of this Release.
The Churchvilles further assert that the Release was not intended to resolve the pending tort claim against GACS. While the Release does not specifically mention the pending tort claim, the language of the Release belies the assertion that the tort claim was not to be covered by the Release.
The instant tort claim was related to and arose out of Mr. Churchville's employment. The recital clause specifically states that Mr. Churchville "wishes to waive all claims arising from his employment." The release provision itself states that Mr. Churchville "[w]aives and releases and forever discharges . . . all claims, rights and causes of action, in law or in equity, of any kind whatsoever, . . . whether such claims, rights or causes of action are now known or later discovered." This provision further dictates, "The claims, rights, and causes of action covered by this waiver and release include, but are expressly not limited to . . . any other claim, right or cause of action founded in tort. . . ." The language of the Release is clear and unambiguous. We are unable to rewrite the clear and unambiguous terms of a voluntary contract. See Med. Ctr. Health Plan v. Brick, 572 So.2d 548, 551 (Fla. 1st DCA 1990). Moreover, this rule applies even when contractual terms bind a party to a seemingly harsh bargain:
Contracts are to be construed in accordance with the plain meaning of the words contained therein. . . . It is never the role of a trial court to rewrite a contract to make it more reasonable for one of the parties or to relieve a party from what turns out to be a bad bargain. . . . A fundamental tenet of contract law is that parties are free to contract, even when one side negotiates a harsh bargain.

Barakat v. Broward County Hous. Auth., 771 So.2d 1193, 1195 (Fla. 4th DCA 2000) *1217 (emphasis added) (internal citations omitted).
BROWNING, C.J., dissents with written opinion.
VAN NORTWICK, J., concurs with separate opinion.
VAN NORTWICK, J., concurring.
I concur with Judge Wolf's opinion affirming the final summary judgment under review. I do not reach this result, however, by using the statutory construction principle of noscitur a sociis, although I note that the record reflects that counsel for GAGS made this argument below. In my view, the term "affiliate" in the release before us is clear and unambiguous and I find no necessity to resort to statutory construction.
The mere fact that a contract fails to define a term does not, by itself, render that language ambiguous. Gen. Star Indem. Co. v. West Florida Village Inn, Inc., 874 So.2d 26, 30 (Fla. 2d DCA 2004); see, generally, Richard A. Lord, 11 Williston on Contracts § 30:4 (4th ed. 1999) ("ambiguity does not necessarily exist simply because a contract . . . fails to define a term. . . ."). Further, the definition of the term "affiliate" has become generally accepted in the corporate law context. As Judge Wolf notes, Black's Law Dictionary defines "affiliate" as "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." Black's Law Dictionary 63 (8th ed. 2004). I believe that this definition is derived from the definition of "affiliate" in the federal securities laws. In rule 405 adopted under the Securities Act of 1993, an affiliate is defined as "a person that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the person specified." 17 C.F.R. § 230.405. This definition, in substance, has found its way into general corporate law, including the Florida Business Corporation Act, see section 607.0901(1)(a), Florida Statutes (2007) ("`Affiliate' means a person who directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, a specified person."), and the Model Business Corporation Act, see Model Business Corporation Act § 13.01 ("`Affiliate' means a person that directly or indirectly through one or more intermediaries controls, is controlled by, or is under common control with another person. . . . ").
Because the term "affiliate" in the release unambiguously includes GACS, the sibling corporation of Allied Systems, the release precludes an action against GAGS and the summary judgment must be affirmed.
BROWNING, C.J., dissents.
I agree with the majority that the actual word "affiliate" is ambiguous, but I disagree that the principle of noscitur a sociis cures such ambiguity. Thus, I am compelled to dissent from the majority opinion, because 1) it overlooks long recognized rules of construction that are more likely to produce a correct and just result reflecting the intent of the parties than the juxtaposition of words used by the majority to support such opinion, and 2) it overlooks permissible inferences in Appellants' favor that preclude entry of a summary judgment here.
There is one overarching factor that vividly reveals the logical and legal unsoundness of affirming the summary judgment here. It is clear from the majority opinion, the parties' briefs, and the parties' statements during oral argument that the word "affiliate" is ambiguous and can be saved only by applying the principle of noscitur a sociis. This principle presupposes that Allied Systems' attorney, when *1218 preparing the Release, arranged the words to effect the meaning attributed to "affiliate" by the majority opinion and that the preparer understood and Appellant, Robert N. Churchville, and his attorney understood that "affiliate" means "sibling" rather than its traditional meaning, "subsidiary," which has its genesis in ancient Latin. If such precise semantical ordering was engaged in, one would expect argument on the issue by the parties in the trial court, in their briefs here, and during oral argument. To the contrary, the principle of noscitur a sociis has never been mentioned by the parties in this case. The parties will learn for the first time what is wrought by the Release, when they read the majority opinion. I think it is plausible to assert from these circumstances that the principle of noscitur a sociis was never a consideration of the parties and does not afford any logical or legal basis for affirmance of the summary judgment. Yet, despite this overarching factor, there are other factors that also mandate a reversal.
It is a recognized principle of law, that when a contract contains an ambiguity, it is construed against the document's author, Allied Systems, a sibling corporation. See City of Homestead v. Johnson, 760 So.2d 80 (Fla.2000); Goodwin v. Blu Murray Ins. Agency, Inc., 939 So.2d 1098 (Fla. 5th DCA 2006); Russell v. Gill, 715 So.2d 1114, 1116 (Fla. 1st DCA 1998). All of the reasons that require this court to resort to the principle of noscitur a sociis were caused by Appellee GACS' sibling corporation, Allied Systems' failure to define the word "affiliate" or employ the words "sibling corporations" or "sister corporations," or their equivalent, in the Release. Appellee, which is bound by its sibling corporation, Allied Systems' action, should not be absolved from that responsibility by this Court's affirming rather than reversing the summary judgment.
In any case, the majority, in applying the principle of noscitur a sociis, overlooks a consideration that far outweighs the persuasive benefit derived from that principle here and is based on common practice among all personal injury attorneys: that Appellant Joyce Churchville, wife of Appellant Robert Churchville, was not a party to the Release, and she is indispensable to a complete release of his tort claim. If a litigant intends to settle a personal injury claim, the injured party's spouse is always a party to the release; otherwise, his or her consortium claim remains unsettled and the tort claim continues. Before becoming a judge, I practiced, in part, substantial personal injury law for 35 years, and I never read, prepared, had prepared for me, or ever heard of a release that did not include the injured party's spouse as a party to the release; until this case. Not including a spouse of an injured party in a release when settling a tort claim constitutes malpractice per se, in my opinion. In view of this time-honored, and necessary practice, I conclude it is highly unlikely that the parties to the Release ever intended to release any claim other than Appellant Robert Churchville's workers' compensation claim, where joinder of a spouse is unnecessary. This factor alone should defeat the entry of summary judgment here.
In my view, the majority places too much emphasis on the principle of noscitur a sociis, as if the preparer of the Release weighed each word with the exactness now applied by the majority. To the contrary, it is common practice for attorneys to be extravagant with words, as if the utilization of every possible descriptive word must be stated to effect the intended purpose. For example, one often finds in a release wording such as: "the plaintiffs do hereby release, disclaim, waive, exonerate, forever discharge, etc., defendant." Such practice is unnecessary and is simply "semantical *1219 overkill" rather than a practice relating to the intent of a release's author that the majority so readily divines here by overlooking this common practice. I expect attorneys to reexamine this long-standing practice if the principle of noscitur a sociis is applied to private contracts very often by this court.
Nor do I find a logical underpinning for the majority's utilizing the principle of noscitur a sociis to determine that "affiliate" takes an entirely different meaning because it is used with "subsidiaries" and "parent." If "affiliate" has the same meaning as "subsidiary" in some dictionaries, and it does, how can it be clear and unambiguous that "affiliate" means a sibling corporation by word juxtaposition? See Am. Heritage Dictionary of the English Language 22 (New College ed.) (defining "affiliate" as "a person or organization associated with another in subordinate relationship"). This can be accomplished only by my respected colleagues' concluding as to what the preparer of the Release was thinking when he or she prepared the Release and selected the order of the words used. Such an approach is rank speculation that is unsanctioned by precedent and contrary to the proper construction of a release or any contract. If "subsidiary" and "affiliate" are synonymous, depending upon the dictionary utilized, neither can take meaning from the other; thus, their joint use was simply cumulative.
Since the majority opinion places great importance on semantical ordering, it seems to me that the root meaning of the word "affiliate" is germane. The word "affiliate" derives from the Medieval Latin word "affiliate," which means "to take to oneself as a son." See Am. Heritage Dictionary of the English Language 22 (New College ed.). Appellee does not meet this description as a sibling corporation to the released party Allied Systems. I do not think I can be faulted for concluding that the meaning of a word as understood by Julius Caesar should not be changed by its position with other words in a document, as here.
Perhaps my disagreement with the majority opinion can best be illustrated by a comparison of what the majority opinion fails to permit when compared with the result effected by it. Appellants, in opposition to Appellee's motion for summary judgment, filed an affidavit stating that no settlement of the tort claim was ever intended, only a workers' compensation claim. Appellee did not dispute this claim but elected to base its summary judgment motion on the sole basis that the Release was not ambiguous, thus avoiding involved corporate officers' testifying about the parties' intent when entering the Release. If this court reversed the summary judgment, the case would go back, and involved corporate officers would be forced to testify as to corporate intent about settlement of Appellants' tort claim. Also, Appellant Robert N. Churchville's settlement amount could be compared with those damages customarily paid in workers' compensation cases, which are statutorily mandated, and those damages customarily paid in tort claim cases, which are authorized by statutes and general law, and such comparison could create a contra inference to Appellee's position. Surely, this approach is far fairer, more likely to reach the truth, and compliant with precedent than the approach employed in the majority opinion.
Finally, I must address the majority's opinion quotation from Barakat v. Broward County Housing Authority, 771 So.2d 1193, 1195 (Fla. 4th DCA 2000). That admonition is violated here because the summary judgment and the majority opinion effect a rewrite of the Release to produce a result never intended or contemplated by the parties, for the reasons *1220 expressed. The harsh result of barring Appellants' tort claim is not the result of a bargained-for benefit, but an erroneous result imposed by judicial fiat.
For these reasons, I would REVERSE.
NOTES
[1] In fact, at the March 30, 2004, hearing on the motions for summary judgment, GACS's counsel argued that the term "affiliates" is clear within the context of the Release in that "parent companies" and "subsidiaries" are separately listed, suggesting a vertical relationship between entities, or a "parent-child" relationship, whereas "affiliates" are horizontally related entities, suggesting a "sibling" relationship.