BENTON, C.J.
 

 A workers’ compensation claimant appeals an order “enforcing a settlement” purportedly reached in mediation, raising three issues. Because we agree the parol evidence rule was improperly applied to exclude evidence below, we reverse on that ground without reaching the other issues, and remand for further proceedings.
 

 Whether the writing subscribed at mediation is ambiguous is a question of law subject to de novo review.
 
 See Ivester v. Parkway Reg’l & Specialty Risk,
 
 996 So.2d 909, 911 (Fla. 1st DCA 2008);
 
 Churchville v. GACS Inc.,
 
 973 So.2d 1212, 1215 (Fla. 1st DCA 2008). Our cases recognize at least two categories of release, at least one of which would render any settlement agreement voidable upon the claimant’s timely election.
 
 [1]
 
 “A latent ambigui
 
 *146
 
 ty — as distinct from a patent ambiguity— arises ‘where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings.’ ”
 
 Mac-Gray Servs., Inc. v. Savannah Assocs. of Sarasota, LLC,
 
 915 So.2d 657, 659 (Fla. 2d DCA 2005) (quoting
 
 Ace Elec. Supply Co. v. Terra Nova Elec., Inc.,
 
 288 So.2d 544, 547 (Fla. 1st DCA 1974)). The use of the unmodified word “release” creates in the present case at least a latent ambiguity, affecting a material term of what was reduced to writing at the mediation conference.
 

 In dispute is whether the parties settled claims relating to multiple industrial accidents allegedly occurring while the claimant was employed by the Miami-Dade County School Board, when they subscribed to this writing at a mediation conference:
 

 1.The Claimant has 6 different claims pending at present against the Miami Dade County School Board. Each case is being washed out in the amount of $7,000, and the Claimant will pay her attorney, Ms. Fornaris a statutory fee of $1,800 under each washout and a total amount of costs in the amount of $600. The total amount of settlement for all 6 dates of accident is for $42,000 and Claimant will net minus fees and costs, a net amount of $88,600.
 

 2. Straight stipulation for attorney’s fees wherein the Employer/Carrier pays attorney Asnis, the prior Claimants lawyer, a fee of $5,000 and costs in the amount of $270 to resolve his lien.
 

 3. Employer/Carrier will reimburse the Claimant the amount of $130 for prescriptions as part of the washout settlement in any of the dates of accident.
 

 4. Claimant will sign a resignation and release and the consideration for same is $100.
 

 5. This is a full and final settlement and binding on all parties as of today’s date. The total amount of the settlement including all attorneys fees and costs is $47,500.
 

 Whether this writing constitutes a binding contract settling the case depends on general principles of contract law.
 
 See Robbie v. City of Miami,
 
 469 So.2d 1384, 1385 (Fla.1985) (“Settlements, of course, are governed by the rules for interpretation of contracts.
 
 Dorson v. Dorson,
 
 393 So.2d 632 (Fla. 4th DCA 1981).”).
 

 Parol evidence is admissible and properly considered “in determining the parties’ intent where the existence of some collateral or extraneous matter renders the contract’s application uncertain.”
 
 Emergency Assocs. of Tampa, P. A. v. Sassano,
 
 664 So.2d 1000, 1002-03 (Fla. 2d DCA 1995). When, after the mediation conference, the claimant received in the mail a set of documents that included a comprehensive release
 
 [2]
 
 covering not only
 
 *147
 
 workers’ compensation claims but also a wide array of other potential claims under state and federal law, the claimant refused to sign. The School Board and Gallagher Bassett then filed a motion to enforce the settlement. At the ensuing evidentiary hearing, Ms. Barnwell contended, among other things, that the settlement documents she received in the mail included provisions that made the mediation agreement contingent.
 

 The order under review, enforcing the mediation agreement,
 
 [3]
 
 concluded that the mediation agreement was “clear, unambiguous and enforceable,” and found: “There is no sufficient evidence that any proffered settlement paperwork (which of necessity will follow the agreement entered into at the mediation conference on 3/20/2009) renders the Mediation Agreement dependent upon any contingencies, or represents a modification of the parties’ agreement reached at the mediation conference.”
 

 But the judge of compensation claims reached these conclusions only after excluding the “proffered settlement paperwork,” and refusing to consider it. When the School Board and Gallagher Bassett objected to the admission of the settlement documents they had mailed to Ms. Barn-well, on grounds the documents were parol evidence, he refused to admit them into evidence, but he did accept them as a proffer.
 

 The possibility that the “release” referred to at mediation meant a release of the kind that would make any overall settlement unenforceable
 
 [4]
 
 gave rise to a latent ambiguity, making consideration of extrinsic evidence appropriate.
 
 See Wheeler v. Wheeler, Erwin & Fountain, P.A.,
 
 964 So.2d 745, 749-750 (Fla. 1st DCA 2007) (holding that “latent ambiguity in a contract arises when the contract on its face appears clear and unambiguous, but fails to specify the rights or duties of the parties in certain situations”) (quoting
 
 Jenkins v. Eckerd Corp.,
 
 913 So.2d 43, 52-53 (Fla. 1st DCA 2005)). The judge of compensation claims erred in refusing to admit the proffered documents into evidence, and should consider them on remand.
 

 Reversed and remanded, with instructions.
 

 PADOVANO and CLARK, JJ., concur.
 

 [1]
 

 . Here, the proffered release agreement forwarded by the E/C to Claimant gave Claimant 21 days to consider the agreement and 7 days after executing the agreement to revoke it. It also provided that it would not be effective or enforceable until the revocation period had expired.
 

 [2]
 

 . The release agreement sent to Ms. Barnwell for her signature would have released "all legal, equitable, or administrative claims, demands or liabilities whatsoever, whether known or unknown, that she may have against” the School Board, including explicitly causes of action under various federal statutes including The Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634. The agreement provided:
 

 21. Employee is hereby given up to twenty-one (21) days from the date of presentation of this Agreement to consider its provisions and to consult with attorney, accountant, spouse, or any other person whose advice she values.
 

 22. Employee may revoke this Agreement within seven (7) days following the date of her execution of this Agreement. The parties agree that the provisions of this Agreement do not become effective or en
 
 *147
 
 forceable until the seven (7) day revocation period has expired.
 

 [3]
 

 . The judge of compensation claims also ordered Ms. Barnwell to "execute a resignation from her employment ... [and] a general release in favor of the Miami-Dade County ... School Board.”
 
 But see Jones v. Miami-Dade Cmty. Coll,
 
 933 So.2d 1221, 1222 (Fla. 1st DCA 2006) ("[A] JCC’s authority in such situations extends only to a determination of whether the parties reached a settlement.”).
 

 [4]
 

 . A settlement that includes as a material requirement signing a release that allows a workers’ compensation claimant to repudiate the agreement after execution of the general release is not enforceable against a claimant who expressly rejects the settlement even before executing settlement documents.
 
 See Caceres v. Sedano’s Supermarkets,
 
 36 So.3d 919 (Fla. 1st DCA 2010) ("Because the severance agreement and release, which the JCC concluded was a material part of the overall settlement agreement, provides that Caceres may revoke the agreement within seven days following the date of execution of the agreement, and because Caceres expressly rejected the settlement prior to executing the settlement documents, the JCC erred in finding the parties had reached a settlement of the workers' compensation case.”);
 
 Jones v. Miami-Dade Cmty. Coll.,
 
 933 So.2d 1221 (Fla. 1st DCA 2006).